HUGH L. LYONS AND ANOTHER v. CITY OF MINNEAPOLIS AND OTHERS.[1]

March 19, 1954.

No. 36,196.

*Hadlick & Diessner,* for appellants.

[1]Reported in 63 N. W. (2d) 585.

*John F. Bonner,* City Attorney, and *Palmer B. Rasmusson,* Assistant City Attorney, for respondents.

NELSON, JUSTICE.

This proceeding was brought under the uniform declaratory judgments act, M. S. A. c. 555, to determine the validity of the license-fee schedules imposed under Minneapolis City Charter and Ordinances (Perm. ed.) 31:5 and 47:7. Plaintiffs contend that these license fees applicable to gasoline filling stations are unreasonable and invalid on the ground that they constitute a revenue-producing measure amounting to a tax. Plaintiffs, as copartners, have operated a gasoline filling station at 3551 Lyndale avenue south, Minneapolis, since 1947. The trial court made findings and judgment was entered pursuant thereto holding that Ordinance 31:5, which provided for an increase in license fees, was invalid as a revenue measure, but sustaining Ordinance 47:7 as providing a valid licensing fee under the police power.

This appeal by plaintiffs concerns only the validity of Ordinance 47:7, which provides for the fee of $30 per station with $5 additional for each pump in excess of one, the city not having taken an appeal from the lower court's determination of the invalidity of Ordinance 31:5.

Between the years 1920 and 1925, the license fee for the operation of gasoline filling stations in Minneapolis was $25 per station and $5 for each pump in excess of one. In 1925 the fee was increased to $30 per station with $5 for each pump in excess of one. In 1927 the fee was again increased and fixed at $100 per station and $5 for each pump in excess of one. This ordinance was held invalid as a revenue measure in 1929, and the city then reverted to the former license fee of $30 and $5.

In December 1936 the city council of Minneapolis enacted a comprehensive ordinance entitled:

"An ordinance for preventing of fires within the City of Minneapolis, providing for licenses, regulating the storage, use, handling

and sale of flammable liquids and substances and prescribing penalties for violation thereof."

This ordinance, identified in the permanent compilation of ordinances of Minneapolis as Ordinance 47:7, contains 87 regulatory sections, of which only §§ 3, 14, 15, and 16 are relevant to this case. Section 16 of this ordinance imposes fees of $30 per station and $5 additional for each pump in excess of one, which had been the fees charged since 1929.

On December 12, 1947, the city council passed Ordinance 31:5 which provided a general increase by one-third of all license fees, thereby raising the gasoline station license fees to $40 per station and $7 for each pump in excess of one. Since 1947 a license fee of $89 had been exacted from plaintiffs on their eight-pump station under Ordinance 47:7, but they refused to pay the fee of $89 required for 1952 under Ordinance 31:5, thus precipitating this action.

Plaintiff Glenn H. Lyons testified that any inspections relating to quality of gasoline, accuracy of pumps, and adequacy of air compressors were made by state inspectors (M. S. A. 296.01 to 296.49, 239.01 to 239.51, 183.375 to 183.58), not by city inspectors. He also testified that no periodical inspections were made by the city fire marshal at plaintiffs' station.

Another filling station operator, called by plaintiff, testified that there had been a fire inspection and a check as to debris, rubbish, etc., a month before trial.

Plaintiff called Nathan Harris, research engineer for the city council of Minneapolis, for cross-examination under the statute to determine the costs of all departments connected with the execution of the ordinance. Harris, however, had not been served with a *subpoena duces tecum*, and since he did not have the necessary documentary evidence and records with him, he was dismissed with the request to testify later when he had obtained the desired information. Although Harris did later return to the courtroom, he was not again called to testify.

Plaintiff served a Mr. Ackerman of the bureau of records with a subpoena to furnish certain data, but he also was not called upon to testify.

The only testimony of any probative consequence submitted by plaintiff was in connection with the department of licenses, weights, and measures of Minneapolis. Marjorie Carlson, a clerk in that department, testified that the total number of licenses issued for all categories was 46,944 in 1950 and 28,198 in 1951, of which 887 were for gasoline-station licenses in 1950 and 832 in 1951. (The difference in the total license figures was due to the biennial issuance of bicycle licenses.) She further testified that the total cost of operating the department of licenses, weights, and measures was $57,548 in 1950 and $57,554 in 1951, with estimated expenses for 1952 being $64,831, this latter increase being due to an increase in salaries. The witness Carlson stated, however, that the figures given by her covered only that *one* department and had no relation to expenses in connection with the issuance of licenses by the city council, publication of city council proceedings, granting or denying licenses, or performing the necessary regulatory functions, and she knew nothing about the procedure for fire inspections preliminary to license issuance.

Plaintiffs rested, relying only on the above testimony. The city rested without calling any witnesses or submitting any evidence of its own.

To require a license as a condition precedent to the right or privilege of carrying on certain types of business is a legitimate exercise of the police power. The general rule is that, to be held reasonable, a license fee should be intended to cover the expenses of issuing, the services of officers, and other expenses directly or indirectly imposed or incurred. State ex rel. Remick v. Clousing, 205 Minn. 296, 285 N. W. 711, 123 A. L. R. 465; City of Mankato v. Fowler, 32 Minn. 364, 20 N. W. 361; 4 Dunnell, Dig. & Supp. § 6800. But, as it is almost an impossibility to impose a license fee which exactly equals the necessary costs of issuance and regulation, it is generally held in our decisions that to be upheld as a valid exercise of the police

power a fee need not be so restricted in amount as to eliminate any reasonable revenue which is purely incidental to the issuance of the license and regulation of the business. Crescent Oil Co. v. City of Minneapolis, 177 Minn. 539, 225 N. W. 904; 4 Dunnell, Dig. & Supp. § 6800; 33 Am. Jur., Licenses, § 43.

Of course, if a business has potentialities of developing or degenerating into a nuisance, the protection of the public welfare may justify, from a police-power standpoint, the imposition of a license fee large enough to operate as a restraint to those who might otherwise engage therein (4 Dunnell, Dig. & Supp. § 6800); but we must assume that this would not be the case in a lawful trade or business in the nature of a gasoline filling station. However, the business of operating gasoline filling stations is fraught with some possibility of danger to the public because of the handling of flammable liquids and the fact that at times debris gathers on the premises, and therefore the duty of a large city to protect the physical well-being of its residents and to promote the public safety necessitates that the cost of passing upon the locations of these stations, as well as the necessary inspections and supervision, be included as a part of the expense of regulation.

In order to successfully contest this ordinance plaintiffs are confronted with some basic rules in regard to the construction of such ordinances by the courts. As stated in State v. Taubert, 126 Minn. 371, 372, 148 N. W. 281, 282:

"Ordinances as well as statutes are presumed to be valid, and are not to be set aside by the courts unless their invalidity is clear."

This rule has been repeatedly enunciated by this court.[2]

Although there is a presumption that in exacting the license fee a lawful purpose was intended, a license fee may so far exceed the reasonable expenses incurred for police-power purposes as to be a revenue measure in disguise and therefore invalid. This principle was

---

[2]Ramaley v. City of St. Paul, 226 Minn. 406, 33 N. W. (2d) 19; City of St. Paul v. Clark, 194 Minn. 183, 259 N. W. 824; State v. F. W. Woolworth Co. 184 Minn. 51, 237 N. W. 817, 76 A. L. R. 1202; McReavy v. Holm, 166 Minn. 22, 206 N. W. 942.

applied in Crescent Oil Co. v. City of Minneapolis, *supra*, where this court held the 1927 ordinance fixing the license fee of $100 per annum invalid. It was also applied by the court below in declaring Ordinance 31:5, which provided for a one-third increase in the gasoline filling station license fees, invalid as a revenue measure. But in general it is well settled in this state that the amount of the license fee is largely within the council's sound discretion. As stated in 4 Dunnell, Dig. & Supp. § 6800:

"* * * The amount of license fees is largely a matter of discretion with the municipal authorities. License fees must be reasonable, but a court will not declare them unreasonable unless they are palpably so."

The above rule has been followed by this court in City of St. Paul v. Colter, 12 Minn. 16 (41), and in City of Mankato v. Fowler, *supra*. See, also, 33 Am. Jur., Licenses, § 46.

In accord with the above rules, it is also well established that the persons attacking the validity of an ordinance imposing license fees have the burden of proof of showing that the fees are excessive. See, City of St. Paul v. Clark, *supra;* State v. F. W. Woolworth Co. *supra;* 33 Am. Jur., Licenses, § 46; 53 C. J. S., Licenses, § 19e.

It does not appear from the record that plaintiffs have successfully overcome this presumption and burden of proof.

The plaintiffs rely on the cases of Crescent Oil Co. v. City of Minneapolis, 177 Minn. 539, 225 N. W. 904, and State v. Labo's Direct Service, 232 Minn. 175, 44 N. W. (2d) 823. In the Crescent Oil Co. case the court dealt with a license fee which had been increased from $30 to $100. The comprehensive ordinance of 1936, referred to as Ordinance 47:7, which provided by its title that it was for the prevention of fires within the city of Minneapolis by requiring licenses regulating the storage, use, handling, and sale of flammable liquids and substances and prescribing penalties for the violation thereof, had not yet been enacted at that time. There was testimony in that case to the effect that the cost of issuing the licenses was about 50 cents each. Testimony at the trial as to any inspections or enforcement of regulations was meager. In 1927 the total num-

ber of licenses issued for all categories of business in Minneapolis was 15,237, and the total of gasoline filling station licenses was approximately 500. In 1950 and 1951 the number of filling station licenses had increased to between 800 and 900 and the licenses in all categories to 46,944 in 1950 and 28,198 in 1951. Mr. Justice Holt in concurring in the result of that case said (177 Minn. 543, 225 N. W. 906):

"I concur in the result, but not in all that is said as to the expense involved in enforcing the ordinances relating to filling stations. I further am of the opinion that the finding: 'That the actual cost to the city of issuing said license and enforcing the provisions of said ordinance is about fifty cents each,' is without support."

Surely that case, which held that a license fee of $100 was unreasonable and invalid, is not controlling in the consideration of the validity of a fee of $30 per year and $5 for each pump in excess of one.

In the Labo case an action was brought to declare invalid an ordinance of the village of Richfield which had raised the gasoline filling station license fees from $25 per station and $5 for each additional pump in excess of one to $35 per station and $10 for each pump in excess of one. The evidence in that case indicated that in the year 1948 the village issued 1,606 licenses in all categories at an average cost of 74.8 cents per license. The village clerk testified that there were no inspections and that he knew of only one instance where an inspection was made of a filling station, and that was because of a fire. The village had no such comprehensive ordinance as the city of Minneapolis passed in 1936, and it must be taken into account in considering that decision that the village of Richfield and the city of Minneapolis are not comparable as to size, number of filling stations, or number of licenses. Since this village was exacting a higher license fee than that imposed by a city the size of Minneapolis, the court in that case could well hold the ordinance invalid as a revenue measure. It appears that this case is also not controlling of the facts in the case now before us.

The only question in the instant case is whether the fee imposed in the city of Minneapolis since 1929 of $30 per station and $5 for

each pump in excess of one under Ordinance 47:7 is so excessive as to make the ordinance invalid as a revenue measure.

The trial court found that the provisions of Ordinance 47:7 are valid and subsisting and constitute a proper exercise of the power of defendants to license gasoline filling stations. The court further stated in its memorandum that:

"The Court is of the opinion that plaintiff[s] failed in their proof in connection with their claim of invalidity of Ordinance 47:7-47:7-87 and has failed to show that the license fee therein set is unreasonable and is in effect a tax."

When the legislative power is invoked it is presumed that the legislative body acts with full knowledge of all the facts essential to valid legislation, and if it adopts a regulation in the exercise of the police power and plaintiff assails such legislation as arbitrary or unreasonable, the burden is on him to prove every fact essential to a determination of that issue in his favor.[3]

The record here is devoid of evidentiary proof to support plaintiffs' contention other than the testimony as to cost of issuing licenses in *one* city department. Such meager evidence is not sufficient to overcome the presumption of validity. The proof as to invalidity here being insufficient, and there being an absence of facts to the contrary of which this court may take judicial notice, we are bound on the state of the record to sustain the validity of this ordinance under the familiar presumption in favor of the constitutionality of such ordinances.

It is a well-established rule that findings of fact by a trial court sitting without a jury stand upon the same ground as findings of fact by a jury, and, as such, will not be interfered with by this court if there is any reasonable ground on which said findings may be sustained. We see no reason here to disturb the findings of the court below or the judgment entered pursuant thereto.

Affirmed.

[3]Minneapolis St. Ry. Co. v. City of Minneapolis, 236 Minn. 109, 52 N. W. (2d) 120; State ex rel. Remick v. Clousing, 205 Minn. 296, 285 N. W. 711, 123 A. L. R. 465; Jay Burns Baking Co. v. McKelvie, 108 Neb. 674, 189 N. W. 383, 26 A. L. R. 24.