## CITY OF ST. PAUL v. JOSEPH KEKEDAKIS.

199 N. W. 2d 151.

June 16, 1972—No. 43232.

*Richard H. Knutson,* for appellant.

*Daniel A. Klas,* Corporation Counsel, *Pierre N. Regnier,* Chief Prosecuting Attorney, and *Robert C. Hoene,* Assistant Prosecuting Attorney, for respondent.

Considered by Otis, Kelly, Todd, and Gunn, JJ.

WILLIAM D. GUNN, JUSTICE.*

Defendant was convicted in the municipal court of St. Paul of violation of St. Paul Legislative Code, § 425.03, prohibiting the possession or control of a firearm in a public place. He was given a 30-day sentence, 15 of which were suspended, and appeals from the conviction.

There is little dispute as to the relevant facts. On April 29, 1971, defendant was employed at a gasoline service station located at 400 North Dale Street in St. Paul. Two brothers with the surname of Randle drove into the station, and a conversation took place concerning a burglary at the residence of one of the brothers. This apparently gave defendant concern for his safety. Upon their departure, the Randles indicated they would return. When defendant saw the Randle brothers returning a short time later, he went into the station and got a .38-caliber revolver belonging to his employer and registered in the employer's name. There is some difference in the testimony at this point. Defendant claims that after the Randles arrived the second time they threatened physical harm to him, whereupon he pulled the gun and, without pointing it at the two brothers, ordered them to leave. The Randles deny making verbal threats. In any event, the Randles made a hasty retreat. It appears the incident was reported to the police. Later, when the police arrived, they found defendant carrying the pistol on his person and placed him under arrest.

St. Paul Legislative Code, § 425.03, provides in material part as follows:

"No person shall carry on his person, or have in his possession or control in any public place, any firearm except as provided in Section 425.05 and except the following persons: * * *."

Examination of § 425.05 and the list of "following persons" in

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

§ 425.03 demonstrates that defendant does not come under any of the specified exceptions. Nor can there be any question but that the gun taken from his person was a "firearm" as defined in § 425.01(B)(1).

The issues on this appeal, as stated by defendant, are:

1. "Is Chapter 425.03, Saint Paul Legislative Code so vague and indefinite that it is unenforceable?"

2. "Is Chapter 425.03, Saint Paul Legislative Code a denial of due process to appellant regarding the circumstances of his specific case?"

When the first issue was raised at the trial, the trial judge, although critical of the draftsmanship of some of the sections of the ordinance, said:

"* * * Yet this particular section with regard to carrying firearms is, although somewhat general in its nature, necessarily broad. It does specifically exempt persons who are authorized to carry firearms, by the police department while carrying on their occupation or military persons on duty and peace officers, employees of the Como Zoo under certain circumstances and it indicates that [a] registered target shooting place and sportsmens' clubs for training programs, gun shows, parades and similar public events for places that are licensed premises for the sale of firearms and such instances, that the proscriptions under the ordinance do not apply and I think that it has been well thought out. * * * I feel that as to vagueness and indefiniteness under this particular ordinance it is not so vague and indefinite as to fail to properly advise the public of the law, particularly in a city or metropolitan area of this kind and I deny the motion raised on that ground."

For reasons to be stated, we agree.

1. In considering the issues raised on this appeal we start with the basic rule that "[o]rdinances as well as statutes are presumed to be valid, and are not to be set aside by the courts unless their invalidity is clear." State v. Taubert, 126 Minn. 371,

372, 148 N. W. 281, 282 (1914), quoted with approval in Lyons v. City of Minneapolis, 241 Minn. 439, 443, 63 N. W. 2d 585, 588 (1954).

2. In the recent case of City of St. Paul v. Franklin, 286 Minn. 194, 196, 175 N. W. 2d 16, 17 (1970), this court upheld an ordinance of the city of St. Paul prohibiting disorderly houses against the contention that it was unconstitutionally vague on its face. The opinion reviews the applicable authorities. What was said there need not be repeated except to indicate that the basic test is whether the language is so vague "that men of common intelligence must necessarily guess at its meaning and differ as to its application."

Application of this test to the facts in the present case and the language of § 425.03 lead us to the conclusion that the questioned section of the ordinance is not so vague and indefinite as to be invalid. It merely says that no person shall carry on his person, or have in his possession or control in any public place, any firearm except as otherwise provided in the ordinance. True, this language is broad and inclusive, but we do not find it vague and indefinite.

One of defendant's arguments appears to be that, while the questioned section of the ordinance might properly have been applied to one in his position, it would, in hypothetical situations, present such questions of vagueness and indefiniteness that it must fall. A similar argument was made and rejected by this court in Franklin. There, after reviewing some of the applicable authorities, we said (286 Minn. 198, 175 N. W. 2d 18):

"* * * [W]e decline to pass upon the purely hypothetical issue tendered by these appeals. If we were to do so, not only would we in effect be rendering an advisory opinion, but also, by enumerating the acts or courses of conduct to which the ordinance could constitutionally be applied, we would necessarily rewrite its provisions. That responsibility belongs to the legislative body."

3. Defendant's second issue is his contention that the gasoline service station where the alleged offense occurred was not a public place within the meaning of § 425.03 of the ordinance. While the ordinance in this section defines a public place, that definition throws little light on the question raised. Defendant cites no authorities substantiating his argument that the station was not a public place. No Minnesota case appears to have defined the term. The city cites a number of cases from other states in support of its contention that the station was a public place.

The service station was open for business when defendant was arrested. Such a station invites the patronage of the public. Its economic survival depends upon public patronage. In Onion v. Moreland, 97 S. W. 2d 726 (1936), the Texas Court of Civil Appeals held that the front wall of a filling station satisfied the requirement that certain legal notices be posted in "public places." See, also, Jones v. State, 60 Tex. Cr. 56, 130 S. W. 1001 (1910); State v. King, 268 N. C. 711, 151 S. E. 2d 566 (1966); State v. Boles, 5 Conn. Cir. 22, 240 A. 2d 920 (1967); Steinke v. Municipal Court for San Jose-Milpitas-Alviso Judicial District, 2 Cal. App. 3d 569, 82 Cal. Rptr. 789 (1969). Cf. State v. Robinson, 23 Conn. Sup. 430, 184 A. 2d 188 (1962). We hold that the gasoline service station, open for business when defendant was arrested, was a public place within the meaning of § 425.03 of the ordinance.

Affirmed.

MR. CHIEF JUSTICE KNUTSON took no part in the consideration or decision of this case.

MR. JUSTICE MACLAUGHLIN, not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.