**In the Matter of the Application of NORTHWESTERN BELL TELEPHONE COMPANY, Minneapolis, Minnesota, for Authority to Change its Schedule of Telephone Rates for Customers Within the State of Minnesota.**

**No. C9–85–162.**

Court of Appeals of Minnesota.

July 23, 1985.

Review Denied Sept. 26, 1985.

Joseph A. Maun, James A. Gallagher, M. Michael Monahan, Maun, Green, Hayes, Simon, Johanneson & Brehl, St. Paul, for Northwestern Bell Telephone Co.

Hubert H. Humphrey, III, Atty. Gen., Michael J. Bradley, Asst. Atty. Gen., St. Paul, for Attorney General.

Craig Anderson, Sp. Asst. Atty. Gen., St. Paul, for Department of Public Service.

Karl W. Sonneman, Sp. Asst. Atty. Gen., St. Paul, for Minn. Public Utilities Commission.

Robert J. Hennessey, Andrew J. Mitchell, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, and J. Walter Hyer, III, Aurora, Colo., for amicus curiae U.S. West Direct Co.

Heard, considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ.

## OPINION

PARKER, Judge.

Northwestern Bell Telephone Company (NWB) appeals from an order of the Minnesota Public Utilities Commission (MPUC) concluding that NWB's plan for reporting directory revenues and expenses is incomplete and ordering it to submit a revised plan of accounting and reporting. NWB contends the MPUC lacks authority to compel it to prepare the accounting because the accounting would be based upon the records of an affiliated company. We affirm.

## FACTS

NWB is a wholly owned subsidiary of Northwestern Bell Corporation, which is itself a wholly owned subsidiary of U.S. West, Inc. NWB petitioned the MPUC for a general rate increase. During the course of the proceeding, it notified the MPUC that it was transferring its directory operations to U.S. West Direct. U.S. West Direct, similarly, is a wholly owned subsidiary of Landmark Publishing Company, which is also a wholly owned subsidiary of U.S. West. Thus, both are wholly owned, ultimately, by U.S. West.

First, NWB exchanged $23.3 million in cash and $2.1 million in physical assets for an equity interest in Landmark Publishing Company. NWB declared a dividend and transferred its equity interest in Landmark to U.S. West. NWB then entered a three-year publishing agreement with U.S. West Direct. Under the terms of the agreement, U.S. West Direct publishes both the white and yellow page directories. It can sell yellow pages advertising and has the exclusive right to use NWB's name, logo, tradename and trademarks in publishing the directories. It has further agreed to pay NWB publishing fees for each of the three years and transition fees for two years. Under separate contracts NWB agreed to provide a variety of services, such as billing and collecting, for U.S. West Direct. NWB may extend the agreement for two years. Either party may cancel by providing a one-year written notice.

In June 1984 the administrative law judge issued his recommended findings. He concluded that NWB's transfer of assets did not require the prior approval of the MPUC but that it would be appropriate to impute revenue to NWB because of the transfer. Because he also concluded that NWB failed to provide the evidence necessary to determine an amount, he recommended that the MPUC order NWB to "maintain records from which the precise effects of the transfer of assets and affiliated transactions can be determined for subsequent rate making proceedings."

In an order dated July 27, 1984, the MPUC increased NWB's gross annual revenues, declared the transfer of directory operations and associated assets from NWB to U.S. West Direct null and void, and ordered the return of the directory operations to NWB. In addition, the MPUC ordered NWB to make an annual report regarding the revenues, expenses and investments associated with the provisions of directory operations. As a means of implementing this latter order, the MPUC ordered NWB to submit a plan for separate accounting for all revenues, expenses, and investments associated with the provisions of all directory operations.

Pending an appeal to this court, the MPUC granted a stay of the order that declared the transfer null and void and mandated the return of directory operations. It did not stay the order requiring NWB to submit a plan for separate accounting.

NWB submitted its plan for separate accounting of directory operations. It indicated that it would provide the revenues it would receive from U.S. West Direct and the expenses it would incur with regard to directory matters. In a January 10, 1985, order the MPUC found this plan incomplete because it fails to provide the information necessary to evaluate the impact of the current arrangement on rate-payers and defeats the MPUC's intention to gather sufficient data to evaluate yellow pages revenue. The MPUC ordered NWB to submit a revised plan which includes not only revenues generated during the stay but also all directory advertising revenues currently generated by the directories published for NWB's Minnesota exchanges and the related expenses. NWB appeals from the January 10 order.

After this appeal was filed, the Court of Appeals issued its decision in NWB's earlier appeal. *See In the Matter of Northwestern Bell Telephone Co.*, 367 N.W.2d 655 (Minn.Ct.App.1985). We held the MPUC did not have the authority to void the transfer of NWB's directory operations to an affiliate, the MPUC can investigate the reasonableness of the fees paid by U.S. West Direct to NWB, and "[i]f it decides the contract was not in the best interests of the rate payer and that the fees paid by West Direct to Northwestern were unreasonable, it can make an adjustment to Northwestern's rate request." *Id.* at 661.

## ISSUE

Does the MPUC have the authority to compel NWB to prepare accountings which include information contained in the records of U.S. West Direct?

## DISCUSSION

NWB contends the MPUC lacks authority to order accounting reports which include information that is not contained in its books and records but is contained in the books and records of an affiliated company. The MPUC contends it has both statutory and implied authority to require NWB to produce an accounting plan relating to directory services and claims the data which will be produced is necessary for future rate making.

■ The MPUC has those powers expressly delegated by the legislature and those fairly implied by and incident to those expressly delegated. *Great Northern Railway Co. v. Public Service Commission*, 284 Minn. 217, 221, 169 N.W.2d 732, 735 (1969) (quoting *Backus-Brooks Co. v. Northern Pacific Railway Co.*, 21 F.2d 4, 19 (8th Cir.1927)). Implied powers "must be fairly drawn and fairly evident

from the agency objectives and powers expressly given by the legislature." *Peoples Natural Gas Company v. Minnesota Public Utilities Commission*, 369 N.W.2d 530 (Minn.1985).

The MPUC's powers are defined Minn.Stat. § 216A.05, subd. 1 (1984):

It may make such investigations and determinations, hold such hearings, prescribe such rules and issue such orders with respect to the control and conduct of the businesses coming within its jurisdiction as the legislature itself might make but only as it shall from time to time authorize.

The legislature not only authorizes the MPUC to determine that telephone rates are fair and reasonable, but it requires the MPUC to make such determinations. *See* Minn.Stat. §§ 237.06 and 237.075, subd. 6 (1984). In making its determinations, the MPUC must give consideration "to the need of the telephone company for revenue sufficient to enable it to meet the cost of furnishing the service * * *." Minn.Stat. § 237.075, subd. 6.

Ratemaking is a legislative function. *See Northwestern Bell Telephone Company v. State*, 299 Minn. 1, 28, 216 N.W.2d 841, 857 (1974). A legislative function is defined as:

the establishment and promulgation of all rules, orders and directives of general or particular applicability, governing the conduct of the regulated persons or businesses, *together with such investigative procedures as are incident thereto* and all other valid acts and procedures which are historically or functionally legislative in character.

Minn.Stat. § 216A.02, subd. 2 (1984) (emphasis added); *see also* Minn.Stat. § 237.02 (1984). Like any legislative function, it must be fully exercised by the MPUC. *See* Minn.Stat. § 216A.05, subd. 4 (1984).

The MPUC found that NWB's accounting plan for directory operations was incomplete because it failed to provide the information necessary to evaluate the impact on rate-payers of the arrangement between NWB and U.S. West Direct and it defeated the MPUC's intention to gather sufficient data to evaluate yellow pages revenue. NWB does not challenge the need for the information and acknowledges that the MPUC "has ample, and unchallenged, authority to obtain whatever information is currently contained in the Company's books and records." Its sole challenge is to NWB's authority to compel it to prepare accountings which include information contained in U.S. West Direct's records.

The Minnesota Supreme Court addressed a similar question in *Northwestern Bell Company v. State*. In that case it adopted the position of the New York Court of Appeals that the public service commission has authority to make an independent inquiry into the propriety of amounts paid by the telephone company to affiliated suppliers. The New York court stated:

[W]hen a utility and its suppliers are both owned and controlled by the same holding company, the safeguards provided by arm's-length bargaining are absent, and ever present is the danger that the utility will be charged exorbitant prices which will, by inclusion in its operating costs, become the predicate for excessive rates.

*Id.*, 299 Minn. at 20, 216 N.W.2d at 853 (quoting *Matter of General Telephone Co. v. Lundy*, 17 N.Y.2d 373, 378, 271 N.Y.S.2d 216, 220, 218 N.E.2d 274, 277 (1966)). The New York court held that the authority to investigate prices charged by affiliated suppliers was implied from the rate-making powers granted by the legislature to the commission and noted that the scrutiny is not intended to invalidate contracts entered with suppliers, but simply to

disregard unwarranted payments to affiliates when calculating the 'just and reasonable' rates which the telephone company will be permitted to charge to its subscribers.

*Id.*, 216 N.W.2d at 853–54 (quoting *Matter of General Telephone Co.*, 17 N.Y.2d at 380, 271 N.Y.S.2d at 222, 218 N.E.2d at 278).

Similarly, it is incumbent upon the MPUC to evaluate the impact on rate-payers of the arrangement between NWB and U.S. West Direct. It must know how profitable the directory operations are in order to impute revenue to NWB and to determine whether telephone rates are just and reasonable. We find that just as there is implied authority for the MPUC to make an independent inquiry into the propriety of the amounts paid by the telephone company to its affiliated suppliers, there is implied authority to require NWB to provide a sufficient accounting for the MPUC to evaluate the impact of its arrangement with U.S. West Direct, even though NWB will necessarily have to obtain the basic data from U.S. West Direct.

Our decision is mandated not only by statute and previous case law, but also by recent decisions of both this court and the supreme court. In *In the Matter of Northwestern Bell Company* we held that the MPUC did not have the authority to void the transfer of NWB's directory operations to an affiliate but said that it could investigate the reasonableness of fees paid by U.S. West Direct to NWB. We noted that the administrative law judge found that imputing revenue to NWB would be appropriate as a consequence of the transaction and that NWB failed to provide competent evidence which could be used in determining an amount. We also noted that the administrative law judge recommended that the MPUC order NWB to maintain records from which the precise effects of the transfer of assets and affiliated transactions could be determined. We concluded that the interests of rate-payers could be protected by adjustment of rate requests.

In *Peoples Natural Gas Company*, the supreme court considered the enlargement of express powers by implication and said that where there is no ambiguous language to construe, "we must look at the necessity and logic of the situation." 369 N.W.2d at 534.

Here, both necessity and logic mandate that implied authority be found. "By un-dertaking to serve the convenience of the public, the company has submitted a large part of its conduct to public scrutiny * *." *Northwestern Bell Company v. State,* 299 Minn. at 16, 216 N.W.2d at 851 (quoting *State v. Tri-State Telephone & Telegraph Co.,* 204 Minn. 516, 536, 284 N.W. 294, 307 (1939)). The MPUC refused to·allow NWB to avoid that scrutiny by arranging for U.S. West Direct to undertake the profitable yellow pages operation without retaining access to the very information needed to protect the public interest. We will not sanction an avoidance of that scrutiny. NWB states in its brief that it has recognized from the beginning of this proceeding "that the adequacy of the revenues it obtains from Direct would be subject to commission scrutiny under the holding of *Northwestern Bell Telephone Company v. State."* To claim now that MPUC does not have the authority to require it to supply the very information needed to determine the adequacy of the revenues from U.S. West Direct is disingenuous. The MPUC has ample implied authority from its express authority to determine that rates are just and reasonable, the legislative directive to exercise this function fully, and the general powers delegated to enable the MPUC to determine that rates are just and reasonable. *See* Minn.Stat. §§ 237.06; 237.075, subd. 6; 216A.05, subd. 4; 216A.05, subd. 1; 216A.02, subd. 2; and 237.02. If the MPUC were not seeking the information in question, it would be abdicating its responsibility to the public and ignoring the legislative mandate of Minn. Stat. § 216A.05, subd. 4. NWB's right to transfer assets is predicated upon the MPUC's ability to protect the public interest. This interest is protected only if MPUC knows how profitable directory operations are.

NWB argues that even if MPUC has the authority to mandate it to produce the information in question, it cannot adopt a unique accounting rule for it but must resort to rulemaking. We do not agree. The MPUC is not making a "statement of general applicability" and thus is not en-

gaged in rulemaking. *See* Minn.Stat. § 14.02, subd. 4 (1984). "Administrative policy may be formulated by promulgating rules or on a case-by-case determination," and the agency has discretion to decide which method is appropriate. *Bunge Corp. v. Commissioner of Revenue,* 305 N.W.2d 779, 785 (Minn.1981). We find that, because of the circumstances, the MPUC did not err by issuing an order rather than promulgating a rule.

■ In the briefing there was substantial discussion about whether the MPUC could obtain the requested information directly from U.S. West Direct. The MPUC made no order addressed to U.S. West Direct; thus, any opinion on the subject would be advisory. We do not issue advisory opinions. *Richview Nursing Home v. Minnesota Dept. of Public Welfare,* 354 N.W.2d 445, 459 (Minn.Ct.App.1984).

### DECISION

■ Since the MPUC has the implicit authority to compel NWB to supply the information needed to determine the adequacy of the revenues from U.S. West Direct, it can properly direct NWB to prepare a plan for the orderly gathering of the information.

Affirmed.

POPOVICH, Chief Judge, dissenting.

I respectfully dissent for the following reasons:

1. MPUC has neither express nor implicit authority to do indirectly what it cannot do directly—impose record-keeping and reporting requirements on an unregulated affiliate of Northwestern Bell. Northwestern Bell Telephone Company (NWB) is a subsidiary of Northwestern Bell Corp., which is a subsidiary of U.S. West, Inc. U.S. West Direct is a subsidiary of Landmark Publishing Company, which is a subsidiary of U.S. West, Inc.

Direct is not a telephone company and not subject to regulation by MPUC. *In re Application of Northwestern Bell Telephone Company,* 367 N.W.2d 655, 660

(Minn.Ct.App.1985). Further, the MPUC has no jurisdiction over transactions between telephone companies and their affiliates. *Id.* at 661. Thus, MPUC cannot directly impose record-keeping and reporting requirements on Direct.

MPUC has no express authority to indirectly impose reporting requirements on Direct by requiring NWB to prepare accountings which include information contained in its records. The majority, in effect, acknowledges this fact by resorting to implied authority. In doing so, they overreach. The MPUC does have power fairly implied by and incident to those expressly delegated. However, if there is "any reasonable doubt of the existence of any particular power," it should not be exercised, and this court should not sanction its exercise. *Great Northern Railway Company v. Public Service Commission,* 284 Minn. 217, 221, 169 N.W.2d 732, 735 (1969) (quoting *Backus-Brooks Co. v. N.P. Ry. Co.,* 21 F.2d 4 (8th Cir.1927)).

2. The majority rests its finding of implicit authority upon the MPUC's express responsibility to determine that rates are just and reasonable. Their reasoning is faulty for two reasons. First, any powers the MPUC has to investigate commence when a proposed rate change is requested. *See* Minn.Stat. § 237.075, subds. 1, 2 (1984). Second, if NWB proposes a rate increase, the burden is upon *it,* not MPUC, to show that the change is just and reasonable. Minn.Stat. § 237.075, subd. 4 (1984). If NWB does not meet its burden, MPUC cannot approve the change. Therefore, not only is there no basis for implying authority based on MPUC's responsibility to determine that rates are just and reasonable, there is no need to do so. NWB must meet its burden if it wants a rate change.

3. Granting authority to the MPUC is the responsibility of the legislature. *See* Minn.Stat. § 216A.05, subd. 1 (1984). If the MPUC is to be given additional authority, it should come from the legislature, not from an overly broad reading of the statutes. The MPUC does not have the same explicit authority given by the State of

Washington Legislature to its commission to approve transactions between a telephone company and its affiliates and maintain continuing jurisdiction over such transactions. *Compare* Wash.Rev.Code § 80.-16.02080.16–050. This court should not interpret our statutes as granting implicit authority which would allow the MPUC to approve a transaction between NWB and Direct.

4. We should not find implicit authority to impose record-keeping requirements on NWB of an unregulated affiliate owned completely by another entity. The profitability of Direct is immaterial. The majority apparently is unhappy with the valid spin-off of directory publishing by NWB to Direct and indirectly wants to do what cannot be done directly. I would reverse the MPUC for wrongfully asserting jurisdiction.