**STATE of Minnesota, Respondent,**

v.

**NORTHERN RACEWAY CORPORATION,
Appellant.**

**No. C4-85-1249.**

Court of Appeals of Minnesota.

Feb. 18, 1986.

Review Denied April 24, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Susan Estill, Shakopee, for respondent.

Thomas Grundhoefer, South St. Paul, for appellant.

Heard, considered and decided by WOZNIAK, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

FORSBERG, Judge.

Northern Raceway Corporation (Northern) appeals from an order issued April 9, 1985 by Scott County Court denying its motion to dismiss, and a judgment of conviction entered by order of the district court. We affirm.

## FACTS

Appellant Northern Raceway Corporation, located in the City of Elko, Minnesota, holds races on Saturday nights from late April to late August. In 1984 Northern was charged by the city with operating an automobile racetrack without a license, in violation of City Ordinance No. 16, and with permitting motocross racing on its property without a proper license. The track, which is located about four blocks from downtown Elko, attracts as many as 3,000 spectators, about ten times the population of Elko (300). Northern hires its own security personnel to handle parking and crowd control at the raceway.

Ordinance No. 16, Licensing and Regulating Racetracks, Speedways and Dragstrips, was enacted by the Elko City Council in November of 1971. In December of 1978 it was amended by Ordinance No. 26. Ordinance No. 16 was again amended in March of 1980 by Ordinance No. 31 and in January of 1984 by Ordinance 36. A subsequent council resolution, No. 84–1, set the licensing fee at $100 for a one day license.

As originally enacted, Ordinance No. 16 provided that any person, firm, or corporation must obtain a license in order to operate or maintain a speedway, racetrack, or dragstrip. The annual fee for the license was $500. The fee was increased to $1,500 in 1978, to $2,500 in 1980, and was decreased to $2,000 in 1984.

Northern, through its president John C. Ostdiek, refused to pay the license fee in 1984 and did not obtain a license. Appellant nonetheless operated the raceway on numerous occasions without a license. Northern was cited several times in 1984 for operation of a racetrack without a license. Each violation of the ordinance is a misdemeanor. The citations were consolidated for purposes of Northern's pretrial motion.

Northern moved for dismissal before the county court on the grounds that (1) the ordinances under which it was charged were unconstitutional because they violated Northern's right to due process prior to deprivation of property; (2) that the license fee constituted a tax, was without statutory authority and was therefore invalid; and (3) that it leased the track to another entity for motocross racing and was thus not the proper defendant.

An evidentiary hearing was held. Evidence presented there consisted of the testimony of John Ostdiek, Robert Ostdiek, and Mary Ellen Flicek, the Elko City Clerk. Certain exhibits were admitted, including answers to interrogatories prepared by the city. Flicek testified that the license fee is based on the racetrack's share of general municipal expenses for police protection, administration, fire contract, street lights, and road maintenance.[1]

The county court granted Northern's motion to dismiss the citations charging violation of the motocross licensing requirements but denied the motion to dismiss the citations charging violation of the raceway licensing requirements.

He found that the evidence established that:

[O]ther than police protection, the City incurs very little cost due to the existence of the raceway and motocross business. The City incurs virtually no cost for the issuance of the licenses except for the cost of the license document itself. No agents of the City of Elko inspect the race trace [sic] or the moto cross facilities. The City does not regulate the operation of the track, the noise level, the number of cars or spectators

---

1. The 1984 license fee was $2,000. Flicek testified that, in part, the fee consisted of $1,325 for policing costs, $125 for street lights, and $1,150 for road maintenance.

that may be at the track. The City does, however, incur costs for policing.

The City of Elko employs policemen on Saturday nights (race nights) and alternate Friday nights during the period of time in the year roughly comparable to the racing season. The cost incurred by the City for policing on Saturday nights only was approximately $3,000 per year in both 1983 and 1984. (Answer to Interrogatory No. 2)

\* \* \* \* \* \*

According to the testimony of Mr. Ostdiek the average attendance at the races is approximately 1,500 with a maximum attendance of 3,000. This would bring into the City a number of persons approximately ten times the average population of the City. Answer to Interrogatory No. 7 indicates that during 1983 there were seven incidents in which the police were involved which was a direct result of the racing operation. In the year 1984 there were thirteen such direct incidents.

Based upon these findings, the county court ruled that:

The regulation of the business must include the ability to police and regulate the people attracted to the town. The costs incurred by the city exceed the license fee. Defendant's motions regarding the racetrack must be denied.

A trial was held before the district court on the raceway license issue and on June 25, 1985, that court rendered a judgment of conviction finding Northern guilty of operating a racetrack without a license. The court stayed imposition of the sentence for one year on condition that Northern not willfully violate the licensing ordinances, regulations, and resolution of the City of Elko for that one year period.

Respondent City of Elko acknowledges that the city incurs very little cost due to the operation of the raceway. However, the city claims it incurs costs for policing the track and the people it draws. The alleged cost includes police involvement in seven incidents in 1983 and thirteen in 1984

which are claimed to be a direct result of the racing operation.

Appellant argues that a municipal license fee based solely on the cost of providing city-wide police protection is unconstitutional and is a tax imposed without statutory authority. Respondent argues the municipal license fee assessed is reasonable and constitutional as a license fee within statutory authority.

## ISSUE

Did the trial courts err in denying the motion to dismiss and ordering entry of judgment of conviction on the basis that a city may legally assess a portion of the cost of city-wide police protection as part of a license fee?

## ANALYSIS

██ Under its police power a municipality may enact ordinances for the welfare and health of its citizens. *Fairmont Foods Co. v. City of Duluth*, 260 Minn. 323, 325, 110 N.W.2d 155, 157 (1961). To require a license as a condition precedent to the right to carry on a certain type of business is a legitimate exercise of a city's police power. *Lyons v. City of Minneapolis*, 241 Minn. 439, 442, 63 N.W.2d 585, 588 (1954). Licensing ordinances must be reasonable, though, or they constitute a tax and are illegal. *Minneapolis Street Railway Co. v. City of Minneapolis*, 236 Minn. 109, 119, 52 N.W.2d 120, 125 (1952). Cities have no inherent power of taxation—only that granted by the state constitution and by legislative authority. *See e.g., State v. Clarke Plumbing and Heating*, 238 Minn. 192, 194, 56 N.W.2d 667, 669 (1952) (municipal corporation is limited to powers contained in enabling legislation).

██ What is reasonable is largely discretionary with the city council. *Lyons*, 241 Minn. at 444, 63 N.W.2d at 589. An acceptable licensing ordinance must meet the following test:

[A] reasonable license fee should be intended to cover the expense of issuing it, the services of officers, and other ex-

penses directly or indirectly imposed. Unless, however, the amount is manifestly unreasonable in view of its purpose as a regulation, the court will not adjudge it a tax.

*City of Mankato v. Fowler*, 32 Minn. 364, 366, 20 N.W. 361, 362 (1884). The costs included must be only the cost of regulating the business itself and not the general public, who may also become patrons of the business or who incidentally benefit by increased safety because of the city's use of police. *Minneapolis Street Railway*, 236 Minn. at 117–19, 52 N.W.2d at 124–26.

■ In this case there was evidence of several incidents per year requiring police protection from the city which were a direct result of the operation of the racetrack. The amount allocated to Northern for its share of police protection is not manifestly unreasonable considering the overall cost to the city.[2] Accordingly, we must uphold the ordinance.

Appellant's reliance on *Minneapolis Street Railway* is misplaced. There the supreme court held a streetcar company license fee unreasonable where it included costs for police protection, which were costs for regulations and safety measures that benefited the general public. These expenses could not be passed onto the streetcar company because they were not created as a result of the streetcar business. They were incurred by the city as part of its general duty to maintain safety on Minneapolis streets. The streetcar company did not create distinct, additional expenses for the city. Police facilitated all traffic—streetcar, vehicular and pedestrian. *Id.* at 117, 52 N.W.2d at 125.

■ In contrast, Elko requires additional police protection because of the racetrack. The population is significantly increased on race nights, to ten times the city's normal population. Northern should bear the cost of policing the raceway patrons it attracts. Additional costs are incurred by the city as a result of operation of the track. The

costs are part of regulating the business itself.

### DECISION

The trial courts did not err in denying a motion to dismiss and ordering entry of judgment of conviction. The city may assess a portion of the cost of city-wide police protection as part of a racetrack license where additional costs to the city are incurred because of racetrack patrons.

Affirmed.

2. For example, Flicek testified that the $1,325 amount assessed Northern's share of police pro-

tection was estimated based on the total cost to the city for police personnel of $2,928.