**DUNHAM'S FOOD & DRINK, INC., et al., Appellants,**

v.

**CITY OF WEST ST. PAUL, Respondent.**

No. C9–94–1559.

Court of Appeals of Minnesota.

Jan. 31, 1995.

Thomas F. Hutchinson, David S. Wething, Eastlund, Solstad & Hutchinson, Minneapolis, for appellants.

Rollin H. Crawford, Stephen H. Fochler, LeVander, Gillen & Miller, South St. Paul, for respondent.

Carla J. Heyl, League of Minnesota Cities, Shoreview, for amicus League of Minnesota Cities.

Considered and decided by RANDALL, P.J., and SHORT and MULALLY*, JJ.

## OPINION

RANDALL, Judge.

Appellants Dunham's Food & Drink, Inc., et al. appeal from the district court's dismissal of their claim against the City of West St. Paul (city). Appellants contend that the fee a city may charge for a liquor license is narrowly restricted by statute to the dollar costs of issuing and directly enforcing the license. Minn.Stat. § 340A.408, subd. 2(a) (1992). They further argue that the district court erred in determining that the city's

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap- pointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

Appellants are seven West St. Paul businesses engaged in the retail "on-sale" of intoxicating liquor. The city issues licenses to these establishments. Each business pays a license fee set by the city. From 1980 through 1992, the city charged an annual fee of $2,500 for each license. During that lengthy period appellants paid the $2,500 without court challenge.

In 1992, the West St. Paul City Council passed ordinance 92–09, which set a new fee schedule for the next six years. The annual fee would increase from $2,500 to $2,750 in 1993 and then by $250 per year until 1998, when the annual fee would reach $4,000. Only the 1993 fee increase of $250 is at issue in this lawsuit.

The city uses a variety of methods to enforce liquor laws and inspect licensed premises. The police conduct periodic "walk-throughs" of licensed premises to check for underage drinkers and as a display of police presence. Police usually spend five to ten minutes in the bar during a walk-through, talking to customers and to the bartender. Officers also perform nightly checks of liquor establishments to ensure compliance with closing laws. Police respond to calls from bars and help deal with intoxicated patrons.

The city council committee of the whole met to discuss ordinance 92–09. During the meeting, a bar owner asked if the walk-through program was simply being used to justify increased license fees. A council member responded that it was not being used solely to justify an increase, but rather was the beginning of a new community policing program.

At trial, the city retained David M. Griffith & Associates (DMG), a national public sector management consulting firm. DMG studied the costs associated with the city's liquor licenses, namely the (1) police walk-through program and closing checks; (2) police responses to direct calls; (3) city attorney expense; (4) city clerk expense; and (5) fire inspection expense. DMG concluded that in 1993 these items cost the city $90,604, and that since the city collected only $41,250 from the issuance of 15 liquor licenses, the license fees were not a net revenue producing item.

Following trial, the trial court dismissed appellants' action, holding that Minn.Stat. § 340A.408, subd. 2(a) (1992) does not require that the costs of issuing, inspecting and enforcing the liquor licenses equal or exceed revenues from liquor license fees. Also, the trial court, by adopting DMG's conclusions that issuing and enforcing city liquor licenses produced a net loss in revenues, essentially found that respondent was complying with the statute even if it were to be narrowly construed so that a municipality had no discretion to have fees exceeding issuing costs.

## ISSUE

Did the district court err in determining that the city's liquor license fees were reasonable under Minn.Stat. § 340A.408, subd. 2(a) (1992)?

## ANALYSIS

■ The construction of a statute is a question of law and fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). Findings of fact, however, will not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01. Because this court does not render advisory opinions, we consider only the 1993 license fee. *See In re Northwestern Bell Tel.*, 371 N.W.2d 563, 568 (Minn.App.1985), *pet. for rev. denied* (Minn. Sept. 26, 1985). The evidence in the record relates to the city's costs in 1993 and it would be speculation to determine whether proposed future fees are lawful.

The license fee statute provides:

The license fee for a retail on-sale intoxicating liquor license is the fee set by the city or county issuing the license subject to the limitations imposed under this subdivision. *The license fee is intended to cover the costs of issuing and inspecting and other directly related costs of enforcement.*

Minn.Stat. § 340A.408, subd. 2(a) (1992) (emphasis added). The last sentence of subdivision 2(a) was added to the statute in a 1992 amendment and is the focus of this case. 1992 Minn.Laws ch. 486, § 8. Subdivision 2 also lists maximum fees that may be assessed against clubs and for wine licenses. Minn. Stat. § 340A.408, subd. 2 (1992).

 Appellants argue that the statute expressly and narrowly limits the amount of license fees to the city's provable actual dollar cost of issuing, inspecting and directly enforcing the licenses. The statute essentially restates the common law, so we look to common law principles for guidance. *See State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567, 570 (Minn.1994) (statute should not be construed against common-law principles unless so required by express words or by necessary implication). At common law, to be reasonable,

> a license fee should be intended to cover the expenses of issuing, the services of officers, and other expenses directly or indirectly imposed or incurred.

*Lyons v. City of Minneapolis,* 241 Minn. 439, 442, 63 N.W.2d 585, 588 (1954). A court will not declare license fees "unreasonable unless they are palpably so." *State v. Clousing,* 205 Minn. 296, 300, 285 N.W. 711, 713 (1939). Further,

> as it is almost an impossibility to impose a license fee which exactly equals the necessary costs of issuance and regulation, it is generally held in our decisions that to be upheld as a valid exercise of the police power a fee need not be so restricted in amount as to eliminate any reasonable revenue which is purely incidental to the issuance of the license and regulation of the business.

*Lyons,* 241 Minn. at 442–43, 63 N.W.2d at 588. License fees were acceptable under the common law even if they "incidentally yield[ed] some return in excess of the amount necessary to reimburse the city for its police regulatory service." *Minneapolis St. Ry. v. City of Minneapolis,* 229 Minn. 502, 510, 40 N.W.2d 353, 359 (1949). We note the statute relates only to direct enforcement costs, while the common law rule encompassed both direct and indirect costs.

The 1992 amendment is a greater restriction on the license fees than existed at common law. However, we note the amendment does not include mandatory restrictive language that states, for instance, the fee "must not be greater than" or "can not exceed" enforcement costs. The intent of the statute does not appear to deprive a municipality of all discretion in setting reasonable license fee levels.

Appellants contend the district court erred in its conclusion that the statute

> does not require that any fee imposed cannot exceed the costs of issuing and inspecting and other directly related costs of enforcement for the license year.

We agree with appellants that the trial court's statement may seem contrary to the intent of the 1992 amendment. However, we conclude that while there must be a relationship between the costs and the license fees, here the record supports the trial court's finding that the city presented enough evidence to sufficiently correlate the slight increase with the projected issuance and enforcement costs. Appellants willingly paid $2,500 each year for more than ten years. The increase of $250 for 1993 is modest. Even in periods of normal inflation, the cost of law enforcement and police protection is generally related to the consumer price index. Testimony at trial indicated that if the fee had been increased since 1980 dollar for dollar with the consumer price index, a liquor license would cost $4,280 in 1993. It would take an expansive view of the role of an appellate court to reverse a municipality's decision to raise a liquor license fee from $2,500 to $2,750. The trial court did not abuse its discretion by finding that the costs of issuing, inspecting and enforcing liquor licenses justified the city's fee increase.

We recognize that a different issue might be presented if the increase was by leaps and bounds and unsupported by any evidence. Had the schedule for fee increases shown a jump of $2,000 or $3,000 per year for five consecutive years, our decision might be different, but that is not our issue. Here, the increase was modest when compared to prior and unobjected to annual fees. The $250 increase appears reasonable based on the

common sense assumption that law enforcement costs tend to slightly increase each year rather than decrease.

Appellants argue that the walk-through program is not properly included as a direct enforcement cost. According to DMG's study, the walk-through program accounts for more than $77,000 of the $90,604 total enforcement costs. Taking the DMG study at face value, the city's enforcement costs of $90,604 greatly exceeded the $41,250 it received from license fees. Even if the walk-through program were discounted by 50%, the estimated enforcement costs are still in line with the license fees.

■ We conclude the fee increase at issue is well within a municipality's discretion to charge appropriate user fees to businesses. We recognize that user and license fees cannot be a subterfuge for a selective real estate property tax that does not fall uniformly on all business property in the same class. But license and user fees for liquor establishments may legitimately be higher than license fees for a nearby (same property class or zone) business involving, for instance, plumbing or electrical equipment. Real estate taxes on similar assessed valuations should be close, but user fees may be disparate depending on issuing, regulating, and enforcement costs.

There is nothing in this record to support a claim that these liquor license fees are a hidden form of a selective real estate tax.

### DECISION

The district court did not err in its determination that the city's liquor license fees were reasonable under Minn.Stat. § 340A.408, subd. 2(a) (1992).

**Affirmed.**