STATE v. P. S. FINCH.

November 17, 1899.

Nos. 11,855—(25).

### City Ordinance Regulating Expressmen—Prosecution for Violation.

In a prosecution under an ordinance of the city of Minneapolis (to license and regulate hackmen, expressmen, etc.) for using and causing to be used on the streets of the city express wagons in the transportation of baggage and freight for hire, without first obtaining a license so to do, the gist of the offense is engaging in the business without a license; and it is not necessary that the complaint should allege what property the defendant carried, or for whom he carried it.

### Authority Given by Charter of Minneapolis.

The power given by the city charter to license and regulate hackmen, draymen, and expressmen is not limited to those who occupy a regular stand on the public streets. Neither is the ordinance passed in pursuance of the charter limited in its operation to such.

### Ordinance Invalid—License Fees.

The ordinance in question *held* invalid because the prescribed schedule of license fees is in some respects unreasonable in amount, and also because it contains discriminations as to amounts which are purely arbitrary.

Appeal by defendant from a judgment of the municipal court of Minneapolis adjudging him guilty of violation of an ordinance "licensing and regulating hackmen, draymen, expressmen," etc., after a trial before Kerr, J. Reversed.

*John H. Steele*, for appellant.

The complaint is insufficient. The business, as carried on by defendant, was not properly subject to police regulation. In Matter of Jacobs, 98 N. Y. 98; State v. Robinson, 42 Minn. 107. The ordinance is not equal or uniform. Moore v. City of St. Paul, 48 Minn. 331; Moore v. City of St. Paul, 61 Minn. 427. The council had no right to pass such an ordinance. Authority must appear affirmatively in the charter. City of St. Paul v. Traeger, 25 Minn. 248; City of Mankato v. Fowler, 32 Minn. 364. No greater fees should be required than necessary to pay for issuing the license and police supervision. City of Duluth v. Krupp, 46 Minn. 435. The valid and invalid parts are so intermixed that no part can be sustained. Cicero v. Town, 176 Ill. 9. The classification is for revenue and not for regulation. City v. Nodine, 26 Hun, 512. See Farwell v. City, 71 Ill. 269; City v. Vanlaningham, 17 Ill. App. 62. An ordinance of this nature operates only on those who hold themselves out as common carriers for hire. Joyce v. City, 77 Ill. 156; City v. Cole, 78 Ill. 114.

*Frank Healey* and *H. D. Dickinson*, for respondent.

Defendant not having offered to pay a license fee, is not in a position to object. State v. Inhabitants, 53 N. J. L. 132. Section 1 may stand, though section 7 be invalid. In re White, 43 Minn. 250; State v. Duluth G. & W. Co., 76 Minn. 96; State v. Schoenig, 72 Minn. 528. The classification under section 11 is proper. People v. Hotchkiss, 118 Mich. 59. As to the right to pass such an ordinance, see Ogden v. Crossman, 17 Utah, 66; In re Chipchase, 56 Kan. 357; Denver v. City, 21 Colo. 350; Davis v. Mayor, 64 Ga. 128; City v. Green, 7 Mo. App. 468; State v. Mott, 60 N. J. L. 413; Bowser v. Thompson (Ky.) 45 S. W. 73; People v. Baker, 115 Mich. 199; People v. Sawyer, 106 Mich. 428; Cronin v. People, 82 N. Y. 318, 323; Cosgrove v. City, 103 Ga. 835; Pittsburgh v. Hays, 17 Ind. App. 261. Ordinances passed under express powers as to the amount

of burden to be imposed are left entirely to the discretion of the municipal authorities, unless grossly unjust. City v. Bazzette, 159 Ill. 284; Cooley, Const. Lim. (4th Ed.) 243; City v. Fitz, 53 Mo. 582.

MITCHELL, J.

The defendant was charged with, and convicted of, using and causing to be used upon the streets of the city of Minneapolis, in carrying baggage and freight for hire, a vehicle commonly called an "express wagon" (he being then and there a person engaged in carrying baggage and freight for hire), without having first obtained a license so to do, contrary to the provisions of an ordinance of the city entitled "An ordinance licensing and regulating hackmen, draymen, expressmen and other persons engaged in carrying passengers, baggage and freight; regulating their charges and prescribing standing places therefor."

The points urged by the defendant on appeal may be divided into three classes, viz.: (1) That the complaint was insufficient; (2) that evidence was insufficient, in that it did not show that he was carrying on the business of a hackman, drayman, or expressman, within the meaning of the ordinance, or the provisions of the city charter under which it was enacted; (3) that the ordinance was void because certain of its provisions were unreasonable.

The complaint was clearly sufficient. The gist of the offense is engaging in the specified kind of business without a license, and not the particular kind of property which he carried, or the particular person for whom he carried it.

The evidence is clear that he was engaged in the business of drayman or expressman, within the meaning of the charter and ordinance. The only difference between his manner of conducting the business, and that of the ordinary drayman or expressman, who has only one vehicle, is that he carried on the business on a larger scale, having a number of vehicles used in the business. Instead of using the street as a stand for soliciting and receiving orders from the public, he had an office for the purpose on his own premises, on the corner of two public thoroughfares, upon which his vehicles waited ready to fulfil orders when directed by him; and inasmuch as this office is on the same premises as his stables and yards, his

teams and vehicles, when not actually employed, stand most of the time in these yards or stables, instead of the streets. But it appears that he is engaged in the business of what may be termed a public drayman or expressman, holding himself out as such, and receiving orders from the public generally.

The mere fact that a drayman or expressman occupies a stand upon the street is not the sole, or even the main, reason for regulating the business. Nor is there anything in either the charter or the ordinance limiting the police power or its exercise to those who occupy a stand upon the public streets. The business of a public hackman, drayman, or expressman is affected with a public interest, and is liable to peculiar abuses, and the principal object of these police rules is to regulate the business so as to protect the public against fraud or extortion. And it is just as necessary thus to regulate the business when conducted in a manner adopted by the defendant as it is to do so in the case of those who regularly stand their vehicles on the streets, and there solicit business or receive orders from the public, except in the single matter of providing where they may stand. The fact that the defendant charged for the use of his vehicles by the hour, instead of by the job or according to the amount of goods carried, is of no importance.

But when we come to consider the system of license fees prescribed by this ordinance, we meet with a much more serious question. The scale of fees is as follows:

"(1) For all omnibuses and accommodation coaches running in connection with hotels, shall be charged for licenses, each, the sum of $10. (2) For all omnibuses and accommodation coaches running upon established lines and at stated periods from place to place within the city, shall be charged for licenses, each, the sum of $5. (3) For all hackney coaches, carriages and other vehicles drawn by two horses or other animals, and occupying any public stand, or that shall run for the conveyance of passengers, for hire or reward, within the city, shall be charged for licenses, each, the sum of $1. (4) For all cabs or other vehicles drawn by one horse or other animal and occupying any public stand, or that shall run for the conveyance of passengers for hire or reward, within the city, shall be charged for licenses, each, the sum of $1. (5) For all baggage, express and furniture wagons and vehicles drawn by two or more horses or other animals, shall be charged for licenses the sum of $5. (6) For all baggage, express and furniture wagons and vehicles

drawn by one horse or other animal, shall be charged for licenses, each, the sum of $2.50.  (7) For all drays, carts, wagons and other vehicles running within said city for hire or reward, and not otherwise expressly provided for, shall be charged for licenses, each, the sum of $15.  (8) For all wagons and other vehicles drawn by four or more horses or other animals, for the conveyance of any heavy article or thing for hire, from place to place in said city, shall be charged for licenses, each, the sum of $25.  Provided, that nothing herein contained shall include omnibuses and baggage wagons running to and from hotels free of charge.  (9) For each driver of any licensed two-horse vehicle the sum of $10.  (10) For each driver of any licensed one-horse vehicle, the sum of $5."

The ordinance also provides that no person shall drive any of the vehicles above described without having first obtained a license as such driver, and that the owners of such vehicles shall not drive, or permit any person except a licensed driver to drive, them.   It will be observed that the ordinance provides for two schedules of license fees,—one on the vehicles and another on the drivers.   Within reasonable limits, this is legitimate, and is probably necessary to a full and efficient exercise of police supervision over the business. We only refer to it as bearing upon the question of the reasonableness of the license fees exacted.

License fees exacted in the exercise of the police power must be equal and reasonable.   By "equality" we do not mean that exactly the same sum must be charged against every one falling within the operation of the ordinance.   For example, in this case it is not necessarily true that the same fee should be imposed on every vehicle, without regard to its character or the line of business for which it is used, or that exactly the same license fee should be exacted of every driver, regardless of the kind of vehicle he drives, or what he carries in it.   But what we do mean is that any distinctions that are made in that regard must not be arbitrary, but must be based upon some reason based on such a difference in the situation and circumstances as suggests the practical necessity or propriety of making a distinction as to the amount of the license fee,— as, for example, a difference in the amount of police supervision required.

The second requirement is that the fee charged shall be reasonable.   Usually the amount of the license fee should be limited to

the cost of issuing the license, and the probable expense of police supervision of those engaged in the business. In the case of vehicles occupying a regular stand on the streets, the extra cost of keeping the street clean is also an item which may be taken into account. As already held, this ordinance is not limited to that class of vehicles or drivers. There are some kinds of business which are liable to become public nuisances,—as, for example, hawking and peddling, and the sale of intoxicating liquors,—and which for that reason may, in the proper exercise of police power, be restricted by the imposition of a license fee much in excess of the cost of the license and of police supervision. But the business which this ordinance assumes to regulate is not of that character, and the city has no right to impose a license fee for the mere purpose of restriction by limiting the number of persons who engage in it.

Undoubtedly the city council in this case has quite a large discretion in the exercise of its judgment as to the proper amount of the fee, and the distinction, if any, in that regard between the different classes of persons or subjects brought within the operation of the ordinance; and the courts will not interfere with their action unless it is palpably manifest that the amount charged is excessive, or that the distinctions made are purely arbitrary. But an examination of this ordinance satisfies us that in some particulars the fees charged are clearly unreasonable, and that many of the distinctions as to their amount are purely arbitrary. Take for example vehicles for the transportation of property drawn by two or more horses. The amount of the license fees on the vehicle and the driver vary from $12.50 to $35 upon such vehicle and driver. If the operation of the ordinance was limited to vehicles occupying a regular stand upon the public streets, perhaps a court might not be justified in holding these amounts unreasonable. But it makes no distinction between those who do and those who do not. It is difficult, therefore, to see how these amounts could have been adopted with any reference to the cost of issuing the licenses and the expense of police supervision. But, even if we are wrong in this, still it is clear to us that some of the distinctions as to the amount of the fees are purely arbitrary. For example, the fee charged for hacks, carriages, and cabs used for the transportation of passengers is only

$1, while that charged for baggage and express wagons used in carrying property varies from $2.50 to $25. To take a particular instance by way of illustration, a hack drawn by two horses used in carrying passengers is charged only $1, while a two-horse dray or express wagon used in carrying goods is charged at least $5, and, under subdivision 7 of section 9, possibly sometimes $15. It stands to reason that it cannot cost any more to issue the license in the one case than the other. It is the drivers, and not the vehicles, which require police surveillance, and popular impressions are much in error if drivers of hacks do not require as much of that as drivers of drays and express wagons.

The schedule of rates provided for in this ordinance bears evidence of being designed in part as a revenue measure as well as a police regulation, and it contains a classification, as respects the amount of fees charged, which in some of its features contains purely arbitrary discriminations. If the schedule of fees is invalid, either because unreasonable in amount, or because it makes arbitrary discriminations, the whole ordinance is necessarily invalid, at least as to vehicles used in carrying baggage or freight.

Judgment reversed, and cause remanded, with directions to the court below to discharge the defendant.