# CRESCENT OIL COMPANY OF MINNESOTA v. CITY OF MINNEAPOLIS AND OTHERS.[1]

June 7, 1929.

No. 27,301.

*Neil M. Cronin,* City Attorney, and *Thomas B. Kilbride,* Assistant City Attorney, for appellants.

*Hadlick & Hadlick* and *Thomas Tallakson,* for respondent

HILTON, J.

Appeal from a judgment enjoining the city of Minneapolis and certain named officers thereof from enforcing the provisions of an ordinance relating to regulating and licensing gasolene filling stations and wholesale gasolene and oil storage plants.

This case was before this court on a previous occasion, the decision being reported in 175 Minn. 276, 221 N. W. 6. It was an appeal from an order denying a motion for temporary injunction. But two questions were there involved: (1) Whether there was charter authority for the ordinance; (2) whether the ordinance was valid as a proper regulation in the exercise of the police power or

[1]Reported in 225 N. W. 904.

in effect imposed a tax and was therefore invalid. The decision held that the city council had authority to enact such an ordinance, but did not pass upon the second question, the court being of the opinion that it could better be determined upon a hearing in the regular course of legal procedure rather than upon affidavits presented upon an application for a temporary injunction. The case was so tried, the trial judge concluding that the license fee imposed under the ordinance was unreasonable, exacted as a tax, and for the manifest purpose of creating more revenue for the city; and upon the order thus made judgment of permanent injunction was entered, from which this appeal is taken.

The ordinance requires a license for the operation of every such filling station located on private property in said city and imposes an annual fee of $100 and an additional $5 for each pump in excess of two. The first ordinance of this nature, approved December 13, 1919, imposed an annual license fee of $25; an amendment, approved June 4, 1921, required the giving of a $5,000 bond by the licensee; a further amendment, approved July 11, 1922, prohibited the filling with gasolene of any tank of a motor vehicle while the engine or motor was running and prohibited smoking in or about such filling stations. Other minor amendments, not here important, were approved from time to time. An amendment, approved December 4, 1924, raised the license fee from $25 to $30 with $5 additional for each pump more than one and made the license fee $100 for wholesale oil or gasolene storage plants. The ordinance here in question was approved on October 4, 1927, and was a rise of 233 1/3 per cent. An ordinance, approved January 4, 1928, prohibited placing upon any street, curb or sidewalk any accumulation of snow, ice, rubbish and other dangerous or unwholesome substances by a licensee or other person in charge of or operating a gasolene filling station, and required the keeping of all driveways leading to the station and sidewalks and curbs in front thereof free and clear from all such substances.

The trial court correctly held, in line with the decision above referred to, that the business of conducting a gasolene filling station was not of a questionable nature and was not apt to become a

nuisance; was neither hurtful nor pernicious but of a useful character and a necessity in these days of heavy motor traffic. It was proper to impose a reasonable license fee. In the previous decision it was stated: "In 1927 the fee was $30 per annum. It was increased to $100 per annum in 1928. Such an exaction savors much of a tax." The trial court in its memorandum states: "It seems to the court from the evidence in this case that the license fee imposed under this ordinance was unreasonable, exacted as a tax, and for the manifest purpose of creating more revenue for the city."

There are, in the city of Minneapolis, in the neighborhood of 500 filling stations, and the annual revenue to be derived therefrom would be in excess of $50,000. The court found: "That the actual cost to the city of issuing the said license and enforcing the provisions of said ordinance is about fifty cents each." This finding is criticized.

The city comptroller, called for cross-examination under the statute, testified that the total number of all kinds of licenses issued in the city for 1927 was 15,237; that the annual expense for the issuance of such licenses was $8,200.57, being the cost of maintaining the license bureau. This included the salary list and other personal expenses, together with all office supplies, cleaning service, telephone, license plates, insurance, etc. of such bureau, but did not include any part of the cost of the maintenance of other city government activities.

The finding objected to, as we construe it, is sufficiently supported by the evidence. The trial court undoubtedly intended the 50-cent cost simply to include the actual expense of issuing the license, and the words "enforcing the provisions of said ordinance" referred to the minor incidental work entailed in connection with the limited scope of the ordinance. The sum stated was not intended to include other city expenditures that might properly be considered. The city did not, and undoubtedly could not, except in a very limited way, show any such expense. That there are such expenses of no great magnitude can however be taken for granted. Its attempt however to include therein the cost of extra police protection because of an

occasional crime epidemic in which cash and carry grocery stores and oil filling stations were proving favorite scenes of operation by the bandit class was not proper. There was no evidence as to extra cost therefor. There is no necessity for police activities in the way of supervision of those engaged in the business or of the business itself. The protecting of such filling stations from sporadic operations of professional or amateur holdup men does not warrant the charging of the expense thereof to this business. Police protection is a duty that a city owes to its inhabitants; its cost is paid out of general tax revenues to which proprietors and operators of gas filling stations, as well as all property owners, contribute. It will not do thus to single out this business and tax it in an indirect way.

Starting out with the proposition that the ordinance is presumed to be valid, such licensing being a proper exercise of police power, it was incumbent upon the plaintiff to show that the fee imposed was unreasonable as a license fee and was a disguised tax. We recognize the rule that a municipality may, under a proper exercise of the police power, derive a reasonable, incidental revenue from the issuance of licenses. The power to license is not however a power to tax. A reasonable license fee is not a tax; an unreasonable one is. To be unreasonable here it need not necessarily be confiscatory. When application is made for a license, the proper city officers determine whether the location is proper and designate the manner of location, construction and installation. After that the city does nothing further in the way of inspection except perhaps an occasional observation by some official or employe. Necessary inspection is made by the state, which inspects the gasolene as to quality, the dispensing units for accuracy, and the boilers and air compressors for safety. It makes a charge for this service. The state fire marshal also makes periodical inspections. This field is not at all duplicated by the city's activities. The ordinance with which we are concerned contains no regulatory provisions, and no regulation is had. In many of the cases where the question, such as is here involved, was being considered, there was a reduction

from time to time of the fee charged, thus showing an intent to keep exactions within proper limits. Here the number of filling stations increased from year to year, but the amount of the fee always increased, the last increase being from $30 to $100. The purpose is manifest. State v. Bartles Oil Co. 132 Minn. 138, 155 N. W. 1035, L. R. A. 1916D, 193.

The findings of the trial court must stand if they have reasonable support in the evidence. We think they have. A clear distinction is drawn between the amount of a license fee which may lawfully be imposed upon a business which is of a questionable nature and on one which is not. City of St. Paul v. Traeger, 25 Minn. 248, 33 Am. R. 462; State v. Finch, 78 Minn. 118, 80 N. W. 856, 46 L. R. A. 437; City of Mankato v. Fowler, 32 Minn. 364, 20 N. W. 361; City of Duluth v. Krupp, 46 Minn. 435, 49 N. W. 235; Higgins v. Lacroix, 119 Minn. 145, 137 N. W. 417, 41 L.R.A.(N.S.) 737; 4 Dunnell, Minn. Dig. (2 ed.) § 6800, and cases cited. The business here involved was held not to be questionable in the previous decision. Cases cited by the city that have to do with large fees for the licensing of questionable businesses are not particularly helpful under the situation here. This case must be decided on the facts disclosed by the record. We have considered the various assignments of error and find no ground for reversal. There is a marked distinction between police protection of an unquestionable business and police supervision of a questionable business. We hold that the findings of the trial court were amply justified by the evidence and its conclusions were correct. We do not suggest what would be a reasonable fee but do state that the fee of $100 per year with $5 for each additional pump over two is manifestly unreasonable and excessive, and that the ordinance is invalid.

Judgment affirmed.

WILSON, C. J. (concurring).

I concur in the result, but I think the expense of police supervision is an element for consideration.

HOLT, J. (concurring).

I concur in the result, but not in all that is said as to the expense

involved in enforcing the ordinances relating to filling stations. I further am of the opinion that the finding: "That the actual cost to the city of issuing said license and enforcing the provisions of said ordinance is about fifty cents each," is without support.