## STATE (VILLAGE OF RICHFIELD) v.
## LABO'S DIRECT SERVICE.[1]

November 17, 1950.

No. 35,190.

*Thomas Tallakson,* for appellant.
*Mark McCabe,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court adjudging defendant corporation guilty of operating a gasoline filling station in the village of Richfield on June 19, 1948, without obtaining a license to do so, in violation of an ordinance.

Prior to February 23, 1948, ordinance No. 3.01 of the village of Richfield provided for a license fee of $25 for the first pump

[1]Reported in 44 N. W. (2d) 823.

and $5 for each additional pump used in gasoline filling stations within the village. On that date, the ordinance was amended to provide for a license fee of $35 for the first pump and $10 for each additional pump.

Defendant commenced the operation of a gasoline filling station in the village in 1947 and paid the prescribed license fee of $25 for the first pump and $5 for each additional pump for the year 1947. It again applied for a license for the year 1948 and tendered the same license fee as it had paid for the previous year's license. The village refused defendant's application because it was not accompanied by the license fee prescribed by the amendment of February 23, 1948. In June of that year, a complaint was issued charging defendant with the wilful, unlawful, and wrongful operation of an oil station within the village limits without obtaining a license to do so. Thereafter the case was tried in the municipal court of the village, defendant was found guilty of the charge alleged in the complaint, and a fine was assessed against defendant in the sum of $100 and costs. Defendant appealed to the district court of Hennepin county, and the case was heard in June 1949 before the court without a jury. That court found that on, prior to, and after June 19, 1948, there was in force and effect in the village a valid ordinance which required a license for the operation of an oil station in the village and the payment by the applicant for such license of a fee of $35 for the first pump and $10 for each additional pump; and that on, prior to, and after June 19, 1948, defendant operated an oil station in the village without having a license to do so. The court adjudged defendant guilty of the offense charged, and imposed a fine of $100 and costs.

The question raised by defendant on appeal to this court is whether the ordinance as amended, increasing the license fee for the pumps, was valid under the facts and circumstances set forth in the testimony.

Defendant argues that the license fee of $35 for the first pump and $10 for each additional pump is an attempt to impose a tax for revenue purposes instead of a legitimate license fee to cover the reasonable costs to the village of administering the license. Defendant operated six pumps at its oil station, which, under the ordinance as amended, would require it to pay $85 a year for such license. It concedes that a licensing municipality has the right to charge a sum reasonable and commensurate with the cost of issuing and administering the license, which it claims was about 75 cents per license, but contends that the "large spread in such cost and the amount attempted to be exacted indicates the purpose and intent of said ordinance as a revenue measure instead of a regulatory measure." It makes no claim that the village did not have the right to license and regulate gasoline filling stations, but contends that while it does license filling stations it does not regulate them. Defendant further claims that such regulations and inspections in connection with filling stations, namely, inspections of gasoline for quality, of measuring the dispensing devices for accuracy, of boilers and air compressors, and inspections of fire hazards, are all made by the state of Minnesota, for which the operators pay a prescribed fee, and that none of these inspections are made by the village. The following sections of our statute provide for the various foregoing inspections:

(1)  M. S. A. 296.01 to 296.49, inspection of gasoline for quality.

(2)  Sections 239.01 to 239.51, inspection of measuring and dispensing devices for accuracy.

(3)  Sections 183.375 to 183.58, inspection of steam boilers and pressure vessels.

(4)  Sections 73.17 to 73.29, inspection of fire hazards.

The village clerk identified the number of the ordinance under consideration and said that it was originally enacted November 15, 1926, and was amended May 28, 1934, April 17, 1944, and February 23, 1948.

It was stipulated that the court could take into consideration the license fee charged to businesses of a similar nature in Minneapolis and contiguous territory, including villages in the vicinity, and that the list submitted by counsel for defendant might be deemed to be a verification and correct statement of those fees. We quote herewith the list submitted:

"Village of Edina, no license fee; Village of Wayzata, $1.00 per pump; Village of Excelsior, $1.00 per pump; Village of Robbinsdale, $5.00 per pump; Village of Golden Valley, $5.00 per pump; Village of Bloomington, $10.00 for the first pump and $5.00 for each pump thereafter; City of Hopkins, $15.00 for the first pump and $5.00 for each pump thereafter; Village of St. Louis Park, $15.00 for the first pump and $5.00 for each pump thereafter; City of Minneapolis, $40.00 for the first pump and $7.00 for each pump thereafter."

In a letter to the district court, dated June 13, 1949, included in the record, the village clerk stated that for the year 1948 the village issued 1,606 licenses for all categories, at an average cost of 74.8 cents per license. This cost included his estimate of all operational and overhead charges of the clerk's office. Defendant contends that the license fee should be limited to the cost of issuing the license and the probable expense of police supervision of those engaged in the business.

In considering the system of license fees in connection with vehicles and drivers prescribed by an ordinance in State v. Finch, 78 Minn. 118, 122, 80 N. W. 856, 857, this court, speaking through Mr. Justice Mitchell, said that "License fees exacted in the exercise of the police power must be equal and reasonable." By "equality," it explained that it did not mean that exactly the same amount must be charged against everyone falling within the operation of the ordinance. The court there said also that it was not necessarily true that the same fee should be imposed on every vehicle without regard to its character or the line of business for which it was used, or that every driver should be charged exactly

the same license fee regardless of the kind of vehicle he drove or what he hauled in it. However, it continued, any distinctions in the fees must not be arbitrary but must be based on a difference in the situation and circumstances, as, for example, a difference in the amount of police supervision necessary. With reference to the reasonableness of the fee, the court there said (78 Minn. 122, 80 N. W. 857):

"* * * Usually the amount of the license fee should be limited to the cost of issuing the license, and the probable expense of police supervision of those engaged in the business."

A review of the record here discloses that the cost of issuing licenses in all categories in the village in 1948 was approximately 75 cents each. There is no showing as to the probable expense to the village for police supervision of those engaged in the business. The village clerk testified that to his knowledge there were no inspections by the village as to the grade of gasoline used by the stations; that he knew of only one instance where an inspection was made of a filling station, and that was because of a fire. He mentioned that complaints were made occasionally against the manner in which a licensee conducted his business, in which event he presumed that the police would investigate as to whether there was any basis for the complaint. He did not say, however, that such investigation involved any additional policing cost to the village.

A somewhat similar situation involving the increase of a license fee for the operation of gasoline filling stations was before this court in Crescent Oil Co. v. City of Minneapolis, 175 Minn. 276, 221 N. W. 6, and Crescent Oil Co. v. City of Minneapolis, 177 Minn. 539, 225 N. W. 904. The first of these cases was an appeal from an order denying a motion for a temporary injunction. Two questions were there involved: (1) Whether there was charter authority for the ordinance, and (2) whether the ordinance was valid as a proper regulation in the exercise of the police power or in effect imposed a tax and was therefore invalid. The court there held that the city

council of the city of Minneapolis had authority to enact such ordinance, but it did not pass on the question whether the ordinance was valid, since the court was of the opinion that that question could be determined better upon a hearing in the regular course of legal procedure rather than upon affidavits presented upon an application for a temporary injunction.

Thereafter the case was so tried, and the trial court concluded that the license fee imposed under the ordinance was unreasonable and was exacted as a tax for the manifest purpose of creating more revenue for the city. Upon the order thus made, judgment of permanent injunction was entered, from which the appeal was taken and decided in Crescent Oil Co. v. City of Minneapolis, 177 Minn. 539, 225 N. W. 904. In that case, the ordinance required a license for the operation of every filling station located on private property in the city of Minneapolis and imposed an annual fee of $100 and an additional $5 for each pump in excess of two. The first ordinance of that nature was approved in 1919 and imposed an annual license fee of $25. Other minor amendments, not there important, were approved from time to time. An amendment, approved in December 1924, raised the license fee from $25 to $30, with $5 additional for each pump in excess of one, and made the license fee $100 for wholesale oil or gasoline storage plants. On October 4, 1927, the ordinance involved in that case was approved, requiring the payment of $100 annually as a license fee for the operation of each gasoline filling station in the city of Minneapolis and an additional fee of $5 for each pump in excess of two. In the first Crescent Oil Company case, this court said that filling stations are a necessity in modern motor traffic; that they are usually well kept and are not loafing places or resorts for objectionable people; and that they are not of the character of many lines of business which easily tend to become public nuisances. This thought was reaffirmed in the second case, where the court said that it was proper for a municipality to impose a reasonable license fee for such filling stations. However,

it was held in that case that a city ordinance requiring a license fee of $100 a year to be paid for the operation of a gasoline filling station under the facts stated there was unreasonable and invalid and that the license fee was a disguised tax.

It must be conceded that the fact situation there was not exactly the same as in the instant case, inasmuch as the ordinance in that case, approved October 4, 1927, raised the license fee to $100, which amounted to an increase of approximately 233 1/3 percent over the former fee. In the second Crescent Oil Company case, the city comptroller was called for cross-examination and testified that the total number of all kinds of licenses issued in the city of Minneapolis for 1927 was 15,237, and that the annual expense for the issuance of such licenses was $8,200.57, or approximately 50 cents a license, being the cost of maintenance of the license bureau. This included the salary list and other personal expenses, together with all office supplies, cleaning service, telephone, license plates, insurance, etc., of the bureau, but did not include any part of the cost of maintenance of other city government activities. The city attempted to include the cost of extra police protection because of an occasional crime epidemic in connection with the robbery of cash-and-carry grocery stores and filling stations. There was no evidence as to what this extra cost amounted to. The court said that the attempt on the part of the city to include the extra cost of police protection because of this occasional crime epidemic was not proper. The court further said (177 Minn. 542, 225 N. W. 905):

"* * * There is no necessity for police activities in the way of supervision of those engaged in the business or of the business itself. The protecting of such filling stations from sporadic operations of professional or amateur holdup men does not warrant the charging of the expense thereof to this business. Police protection is a duty that a city owes to its inhabitants; its cost is paid out of general tax revenues to which proprietors and operators of gas filling stations, as well as all property owners, contribute. It will

not do thus to single out this business and tax it in an indirect way."

There is no relationship shown in the instant case between the amount of the license fee and the amount of regulatory services necessary on the part of the municipality in connection with the business licensed, except an over-all cost to the municipality of about 75 cents each for the issuance of licenses in all categories. There is no showing that the business involved is of a questionable nature or that it is being operated in such a manner that it might become a nuisance and thus necessitate any extra cost to the municipality for policing activities. The business under consideration here is entitled to the same general police protection that the municipality owes to its other inhabitants, since the cost for this protection is paid out of the general tax revenues to which owners of gasoline filling stations, as well as other property owners in the municipality, contribute in connection with the payment of their taxes. Crescent Oil Co. v. City of Minneapolis, 177 Minn. 539, 225 N. W. 904, *supra.*

As stated in State v. Finch, 78 Minn. 118, 80 N. W. 856, *supra,* there are some kinds of business which might under some circumstances become public nuisances, such as hawking, peddling, and the sale of intoxicating liquors, and which in the proper exercise of the police power might be restricted by the imposition of a license fee much in excess of the cost of the license and of police supervision. There is no showing that the business which the ordinance here assumes to regulate is of that nature. Rather, it appears from the record that the difference between the cost of issuing the license, including the probable expense of police supervision of those engaged in the business, and the amount of the license fee is unreasonable, and that part of such difference is exacted as a tax for the purpose of producing more revenue for the municipality.

While we have quoted from the record the license fees charged to businesses of a similar nature in Minneapolis and in munici-

palities in the contiguous territory, we are not attempting to pass upon the respective merits of those license fees, since we are here considering only the license fee in the matter before us.

For the reasons herein stated, the judgment of the trial court must be reversed.

Reversed.