STATE OF MINNESOTA

IN SUPREME COURT

A15-0015

Court of Appeals                                                                          Lillehaug, J.
                                                                          Took no part, Hudson, J.

First Baptist Church of St. Paul, et. al.,

                 Appellants,

vs.                                                                          Filed: August 24, 2016
                                                                          Office of Appellate Courts

City of St. Paul,

                 Respondent.

_____

John G. Hoeschler, John G. Hoeschler, P.A., Eagan, Minnesota, for appellants.

Samuel J. Clark, City Attorney, Cheri M. Sisk, K. Meghan Kisch, Assistant City Attorneys, Saint Paul, Minnesota, for respondent.

Peter J. Nelson, Golden Valley, Minnesota, for amicus curiae Center of the American Experiment.

Susan L. Naughton, Saint Paul, Minnesota, for amicus curiae League of Minnesota Cities.

Rinal Ray, Saint Paul, Minnesota, for amicus curiae Minnesota Council of Nonprofits.
_____

S Y L L A B U S

1.      Because the City of Saint Paul's 2011 right-of-way assessment was imposed

as an exercise of the taxing power, it was a tax subject to constitutional restrictions.

1

2.    The amount, if any, by which appellants' properties were specially benefited by the City's right-of-way maintenance services presents a genuine issue of material fact precluding summary judgment.

Reversed and remanded.

O P I N I O N

LILLEHAUG, Justice.

Each year, the City of Saint Paul (the City) assesses a charge to nearly every owner of real property within the city limits to pay for a wide range of public right-of-way maintenance services. Appellants First Baptist Church of St. Paul (First Baptist) and Church of St. Mary (St. Mary) (collectively, the Churches) are both located in Saint Paul and subject to the right-of-way assessment (ROW assessment).

The Churches appealed their 2011 ROW assessment to the district court, arguing, among other things, that the charge was a tax not imposed uniformly upon the same class of property and that the amount assessed improperly exceeded the special benefit to their properties. The district court concluded that the ROW assessment was a fee imposed under the City's police power—not a tax imposed under its taxing power—and that the assessment was therefore not subject to constitutional restrictions on taxation. Applying a "reasonableness" test, the district court upheld the assessments. The court of appeals affirmed on the same reasoning. Because we conclude that the City's power to collect the ROW assessment derives from its power to tax rather than from its police power, we reverse and remand for further proceedings.

2

Each year, the City assesses over 81,000 properties—almost every property in the city—and uses the revenue collected to pay for a range of public right-of-way maintenance services. Federally-owned properties, cemeteries, and "certain properties under public ownership" (such as Metropolitan Council properties) are deemed by the City to be exempt from the ROW assessment. Further, certain properties that the City has concluded derive no benefit from the maintenance services—most notably properties that do not abut public rights-of-way—are not assessed.

At the time of the assessments at issue, Saint Paul was the only municipality in Minnesota to fund street maintenance through such an assessment. The City uses this unusual mechanism, at least in part, because its location as the state capital means it is home to an atypically large number of properties that are exempt from local property taxes.

The City's ROW assessment pays for (1) sweeping, flushing, patching, and chip-sealing streets and alleys; (2) patching, blading, and placing crushed rock on unimproved rights-of-way; (3) overlaying streets (meaning placing a new layer of asphalt on an existing street); (4) snow plowing and removal; (5) sanding and salting streets to control ice; (6) tagging and towing vehicles during snow emergencies; (7) trimming and removing trees between the curb and the sidewalk; (8) repairing, replacing, painting, and operating street lighting systems; (9) installing, repairing, and replacing traffic signs; (10) painting

pavement markings; (11) picking up litter; (12) ordinance enforcement; and (13) emergency maintenance services.[1]

The ROW assessment is imposed annually, as authorized by the City's home rule charter and administrative code. The assessment is calculated by multiplying the property's assessable frontage on the right-of-way by a rate that varies based on the property's character and its location within the City. For instance, properties downtown and those abutting arterial streets are assessed at higher rates. Residential properties are generally assessed at lower rates than non-residential properties.

The City uses an accounting and work-order tracking system to attempt to ensure that the total revenue collected through the ROW assessment closely approximates its total right-of-way maintenance costs. Revenue collected is placed into segregated accounts used only to pay for right-of-way maintenance. The revenue covers the bulk of the City's right-of-way maintenance costs; the remainder is paid by local government aid from the state and county governments. For 2011, ROW assessment funds covered approximately 80 percent of the City's right-of-way maintenance costs.

---

[1] The City has used an assessment to fund right-of-way maintenance services since the early 20th century, when it funded sprinkling of water on dirt streets to control dust. The program has expanded significantly since then. Street and alley cleaning and repair were added in 1974. Added in 2003 were winter maintenance (such as plowing) and maintenance of sidewalks, traffic signs, and trees. Street lighting maintenance was added in 2005.

The assessments at issue here were imposed on the Churches in October 2011. In assessing the Churches, the City applied the class 1-A Downtown "All Properties" rate[2] to the Churches' assessable right-of-way frontage. The City charged First Baptist $15,705.90 and St. Mary $8,659.02. The Churches timely appealed their ROW assessments to the district court.

The district court granted the City's motion for summary judgment, but the court of appeals reversed on procedural grounds, holding that the district court erred in failing to rule on the Churches' motion to amend their appeal. *First Baptist Church of St. Paul v. City of St. Paul*, No. A12-1582, 2013 WL 1943045, at *2 (Minn. App. May 13, 2013). On remand, the Churches moved for partial summary judgment on four claims: (1) the assessment violates constitutional principles of uniformity in taxation; (2) the assessment amount exceeds any special benefit to the property; (3) the assessment is not roughly proportional to the special benefits accruing to the property because it is imposed on the basis of linear frontage; and (4) the assessment necessarily exceeds the costs of providing services to the rights-of-way abutting the Churches' properties, because the Churches are charged a higher ROW assessment rate than residential properties abutting downtown rights-of-way receiving the same services. The City moved for summary judgment on all of the Churches' claims, including the four claims just described.

---

[2]     Downtown properties abutting non-brick streets (Class 1-A properties) were subject to one of two assessment rates in 2011. The "residential condominiums" rate was $3.20 per assessable foot. The "all properties" rate, applied to all other Class 1-A properties, was $16.62 per assessable foot. Properties outside of the downtown district are assessed at different rates.

The district court denied the Churches' motion and granted the City's motion. The court rejected the Churches' argument that the ROW assessment constituted a special assessment for local improvements imposed under the taxing power and that the special-benefit test should therefore apply. Relying on *Am. Bank of St. Paul v. City of Minneapolis*, 802 N.W.2d 781 (Minn. App. 2011), the court instead concluded that the ROW assessment is a regulatory "fee for services" imposed under the City's police power, and that the fee was valid because it satisfied a "reasonableness" standard.[3] The court of appeals affirmed on the same reasoning. *First Baptist Church of St. Paul v. City of St. Paul*, No. A15-0015, 2015 WL 5089063, at *3 (Minn. App. Aug. 31, 2015). We granted the Churches' petition for review.

The fundamental question before us is whether the ROW assessment is imposed as an exercise of the City's taxing power or as an exercise of its police power. In other words, is the ROW assessment a tax or a fee? If it is a tax, constitutional restrictions on taxation, including the requirements of uniformity and special benefit, apply.

I.

Because this case is before us on review of a grant of summary judgment, we must review the record to determine whether any genuine issues of material fact exist, and

---

[3] The court also granted the City's motion for summary judgment on three of the Churches' claims that do not turn on the tax/fee distinction (whether the City imposed the assessment in accordance with its own charter, code, and policies, whether the City is required to reassess the Churches' properties, and whether the City must better define key terms and practices used in its ROW assessment program). The court of appeals affirmed. The Churches did not seek review regarding those claims, so they are not before us.

6

"whether the lower courts erred in their application of the law." *J.E.B. v. Danks*, 785 N.W.2d 741, 746 (Minn. 2010) (quoting *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990)).  In doing so, we "must view the evidence in the light most favorable to the party against whom [summary] judgment was granted." *Id.* (quoting *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993)).  Whether the courts below erred in concluding that the assessment was a police-power fee and not a taxing-power special assessment is a question of law that we review de novo.  *See Johnson v. City of Eagan*, 584 N.W.2d 770, 771 (Minn. 1998).

## A.

Special assessments for local improvements are levied under a municipality's taxing power.  *Buettner v. City of St. Cloud*, 277 N.W.2d 199, 201 (Minn. 1979) ("A special assessment is a tax, intended to offset the cost of local improvements . . . which is selectively imposed on the beneficiaries of" the improvements).  As an exercise of the taxing power, a special assessment is subject to constitutional restrictions.  *Carlson-Lang Realty Co. v. City of Windom*, 307 Minn. 368, 369, 240 N.W.2d 517, 519 (1976).[4]  Special

---

[4]     A municipality's taxing authority is conferred by the Legislature.  Minn. Const. art. X, § 1 ("The legislature may authorize municipal corporations to levy and collect assessments . . . .").  Entities exempt from taxation under Article X, Section 1 of the Minnesota Constitution (such as "all churches, church property, [and] houses of worship") must still pay special assessments for local improvements. *See State v. Roselawn Cemetery Ass'n*, 259 Minn. 479, 481, 108 N.W.2d 305, 307 (1961).  This is because "the underlying idea of all such assessments" is that the payers of the assessment constitute a "portion of the community . . . specially benefited in the enhancement of property peculiarly situated as regards the contemplated expenditure of public money." *State v. Reis*, 38 Minn. 371, 373-74, 38 N.W. 97, 98 (1888).

assessments are valid only if they are imposed in an amount that does not exceed the "special benefit" conferred on the assessed property by the improvement. *Id.* The amount of the special benefit is determined by the increase in the market value of the property attributable to the improvement. *Id.*

However, these constitutional restrictions on the power to tax do not apply when a charge is imposed under a municipality's police power. *See Drew v. Tifft*, 79 Minn. 175, 183, 81 N.W. 839, 841 (1900). Such a charge is a fee, not a tax. In determining that the 2011 ROW assessment was a fee and not a tax, the district court and the court of appeals relied heavily on *American Bank*. In that case, the court of appeals concluded that a charge assessed to a property for the cost of abating a nuisance on that property was an exercise of a city's police power, not its taxing power. 802 N.W.2d at 788. *American Bank* concluded that, because the charge was a fee, constitutional restrictions on taxation did not apply and instead a standard of "reasonableness" governed. *Id.*

Although broad, a municipality's police power does not "extend[] to permit revenue raising measures." *Country Joe, Inc. v. City of Eagan*, 560 N.W.2d 681, 686 (Minn. 1997). Determining whether a particular charge imposed by a city government is an exercise of the taxing power or the police power requires a reviewing court to examine the charge's "primary purpose." *See Farmers Ins. Grp. v. Comm'r of Taxation*, 278 Minn. 169, 174, 153 N.W.2d 236, 240 (1967). If "a city's true motivation was to raise revenue—and not merely to recover the costs of regulation," the charge is a tax. *Country Joe*, 560 N.W.2d at 686. The city's characterization of the nature of the charge is relevant, but not

8

conclusive.  *See id.*; *Hendricks v. City of Minneapolis*, 207 Minn. 151, 155, 290 N.W. 428, 430 (1940).

B.

To determine whether the ROW assessment has been imposed under the City's taxing power or under the police power, we turn first to the language of the city charter and code provisions authorizing the charge.[5]  Although the City's charter and code at times refer to the ROW assessment as a "charge for services,"[6] which is suggestive of a police-power fee, the language of the charter and code provisions as a whole demonstrates that the charge is a tax.

The parties agree that Chapter 14 of the Saint Paul City Charter, titled "Special Assessments," is the sole chapter of the city charter that authorizes the ROW assessment. The chapter specifically provides that assessments are for "the cost of improvements as are

---

[5]    At the outset, the City argues that, because the ROW assessment is imposed under its home rule charter and not under the state statutes governing special assessments for improvements, the ROW assessment need not be consistent with generally applicable state law.  However, a city's home rule charter and acts undertaken by the city thereunder must be "in harmony" with the Minnesota Constitution.  *State ex rel. Andrews v. Beach*, 155 Minn. 33, 35, 191 N.W. 1012, 1013 (1923).  Whatever a city's charter may say, a municipality may not violate the state constitution.  *See In re Concord Street Assessment*, 148 Minn. 329, 331-32, 181 N.W. 859, 859-60 (1921) (recognizing that special assessments imposed under the Saint Paul City Charter are still subject to constitutional restrictions, including the special-benefit test).

[6]    For instance, section 14.01.2 of the Saint Paul City Charter describes the ROW assessment as a "charge for services," and provides that "service charges" for the "cost of any services such as street cleaning, street flushing or oiling, and tree trimming" may be "collected and levied like special assessments."  Similarly, the city administrative code describes the City's annual costs and expenses incurred for street and tree maintenance as "service charges."  Saint Paul Admin. Code §§ 61.02, 62.01-.04.

of a local character." Saint Paul, Minn., City Charter § 14.01 (2016). The phrase "improvements . . . of a local character" suggests a special-benefits assessment—a tax—because the state and federal constitutions require that assessments for "local improvements" satisfy the special-benefits test. Minn. Const. art. X, § 1; *Quality Homes, Inc. v. Vill. of New Brighton*, 289 Minn. 274, 279-80, 183 N.W.2d 555, 559 (1971). Indeed, Chapter 14 further provides that "in no case shall the amounts assessed exceed the benefits to the property." City Charter § 14.01. This language, mirroring the very test governing taxing-power special assessments, indicates an intent to impose ROW assessments under the taxing, not police, power. *See Johnson*, 584 N.W.2d at 771-72.

Especially significant is Chapter 14's language describing who is subject to the ROW assessment and in what amounts. The ROW assessment is to be charged against the "property benefited." City Charter § 14.01.2. This is the same phrase used when considering whether a special assessment may be imposed under the taxing power. *See, e.g.*, *Hartle v. City of Glencoe*, 303 Minn. 262, 265, 226 N.W.2d 914, 917 (1975); *see also* Minn. Const. art. X, § 1; Minn. Stat. § 429.051 (2014). Chapter 14 also provides that one of the exclusive bases to appeal a ROW assessment is that it "is in an amount in excess of the actual benefits to the property." City Charter § 14.01.4(2).[7] This language invokes the "special benefit" test applicable to taxing-power assessments. *See In re Meyer*, 176 Minn.

---

[7] At oral argument, counsel for the City, for the first time, took the position that this provision of Chapter 14 does not apply to the ROW assessment. This new argument has no support in the City's charter and code. In fact, the code chapters implementing the ROW assessment specifically subject assessment appeals to the provisions of Chapter 14.

240, 242, 223 N.W. 135, 135 (1929); *In re Improvement of Lake of the Isles Park*, 152 Minn. 39, 42-43, 188 N.W. 59, 60 (1922) ("An assessment cannot be levied . . . in excess of actual benefits"). Police-power fees are not typically limited by the benefits conferred.

Turning now to the city code, the provisions implementing the ROW assessment system also make repeated reference to property "benefited." Saint Paul, Minn., Admin. Code § 62.01(3), .02(a), .04 (2016). They also tie appeals of ROW assessments to the provisions of Chapter 14 of the City Charter—including the provision allowing an appeal based on an assessment in excess of "actual benefits" to the property. *Id.* at § 62.06. In sum, despite use of the term "service charge," the City's charter and code, read as a whole, indicate that the ROW assessment is a tax.

The City's intent is also revealed in its own ROW assessment policies. The policy resolution governing ROW assessments, passed by the city council and signed by the mayor in 2011, uses both "fee" and "tax" language. But it specifically recites that "[t]he law requires that the properties assessed must receive a special benefit from the assessment, that the assessment amount may not exceed the special benefit to the particular property, and that the assessment must be uniformly applied to properties in the same class." The same resolution provides that "[a] major purpose of the ROW assessment is to distribute the costs of street maintenance among all properties that benefit, including tax-exempt and

11

taxable properties." These parts of the resolution tell us that, in the City's eyes, the 2011 ROW assessment was a tax.[8]

## C.

Not only must we examine the City's characterization of the charge, we must also look "beyond the form of the [charge] to its substance" to determine its primary purpose. *Reserve Mining Co. v. State*, 310 N.W.2d 487, 495 (Minn. 1981). Both the district court and the court of appeals concluded that the ROW assessment was an exercise of the police power, not the taxing power, because the money collected was used only to fund services provided under the City's police power. *See First Baptist Church*, 2015 WL 5089063, at *3.

The fact that the money collected pays only for police-power services is not dispositive, nor even very probative. The crucial question is not what power a city exercises when it *uses* the funds collected, but rather what power a city exercises when it *collects* the funds. *See Country Joe*, 560 N.W.2d at 683-84 (noting that the Legislature's grant of broad planning powers to municipalities did not include a similarly broad power to finance city planning through "road unit connection" fees imposed as a condition for a building permit). Thus, the City's repeated assertions that the ROW assessment is a fee because the City possesses broad police powers to regulate the use of its rights-of-way are unpersuasive.

---

[8] The City changed its legal position in 2014, asserting that the ROW assessment is a police-power fee.

12

The City's ROW assessment functions as "a revenue measure, benefiting the public in general," rather than as a "purely regulatory or license fee." *Id.* at 686. We consider it significant that, unlike typical police-power fees, the ROW assessment is not imposed on a limited group of payers; rather, the charge is assessed to, and raises revenue from, the owners of almost all properties within the city limits. Moreover, the City has not shown that the charge is necessitated by the cost of regulating any of the charged properties in the manner of a true regulatory or license fee. *See State v. Labo's Direct Serv.*, 232 Minn. 175, 182, 44 N.W.2d 823, 826-27 (1950). Nor has the City shown that the particular properties charged use or consume specific types and amounts of services, as in the case of utility fees, or that the need for right-of-way maintenance services is generated by the properties themselves. *See Country Joe*, 560 N.W.2d at 685-86 (concluding a charge was not a valid "impact fee" because there was no showing that it was imposed in proportion to costs necessitated by the payers of the charge).

To the contrary, many of the services funded through the ROW assessment benefit the general public in precisely the same manner as they benefit the properties assessed. *See* 84 C.J.S. *Taxation* § 3 (2010); 71 Am. Jur. 2d *State and Local Taxation* § 12 (2012) (stating that a true fee "benefits the party paying the fee in a manner not shared by other members of society"); *Nat'l Cable Television Ass'n v. U.S.*, 415 U.S. 336, 340-41 (1974) (explaining that, by their nature, fees are charged in exchange for services that benefit the payer in a manner "not shared by other members of society"). Fixing potholes, chip-sealing deteriorating streets, maintaining traffic signs and pavement markings, and plowing and

controlling snow and ice make it easier and safer for all Saint Paul residents, commuters, and visitors, not just property owners, to use the rights-of-way.[9]

In this case, the common benefit of the right-of-way services to all who use the city streets was recognized by a longtime Saint Paul City Engineer, who the City provided as an expert for the Churches to depose about the ROW assessment program. When questioned about whether the assessed properties obtain a special benefit from right-of-way maintenance services, the engineer stated that "everyone benefits by having streets plowed, by having streets swept" and that everyone, including those who do not own property in Saint Paul, "benefit[s] by being able to navigate on a well-maintained transportation network." The engineer's testimony is consistent with *Country Joe*, in which we recognized that "improvements to public roads benefit the public in general, not only the bordering property owners." 560 N.W.2d at 686 (quoting *Wielepski v. Harford Cty.*, 635 A.2d 43, 47 (Md. Spec. App. 1994), *vacated on other grounds by Harford City v. Wielepski*, 648 A.2d 192 (Md. 1994)). *Cf. Aldrich v. City of Minneapolis*, 52 Minn. 164, 168, 53 N.W. 1072, 1073 (1893) (recognizing that obstructions in the public right-of-way do "no special or peculiar damage" to abutting property owners, but "merely . . . interfere[] with [the owner's] right to use a public highway, a right which [the owner has] in common

---

[9] Whether the charge benefits the payer in a manner not shared by the general public presents an analytically distinct question from whether an improvement provides a "special benefit" to the property in the form of a market value increase in determining the validity of a special assessment. *See In re Vill. of Burnsville*, 310 Minn. 32, 36-39, 245 N.W.2d 445, 448-49 (1976).

14

with the rest of the public"). In other words, the ROW assessment "benefit[s] the public in general" in a manner characteristic of a tax. *Country Joe*, 560 N.W.2d at 686.

D.

Finally, our conclusion that the ROW assessment is an exercise of the taxing power—a tax—rather than the police power—a fee—is consistent with the way other jurisdictions have addressed very similar questions. For instance, in *Brewster v. City of Pocatello*, the Idaho Supreme Court analyzed a "street restoration and maintenance fee" imposed upon all owners and occupants of property according to a formula that attempted to reflect the traffic generated by each property. 768 P.2d 765, 765 (Idaho 1988). Like Saint Paul, Pocatello argued that the charge was a "fee reasonably related to services to be provided by the city" and therefore a valid regulatory service fee. *Id.* at 767. The *Brewster* court noted that "[i]t is only reasonable and fair to require [a] business, traffic, act, or thing that necessitates policing" to pay fees to offset regulatory costs, but concluded that the street-maintenance fee had "no necessary relationship to the regulation of travel over [the] streets, but rather [was] to generate funds for the non-regulatory function of repairing and maintaining streets." *Id.* As we have in this case, the *Brewster* court determined that "[t]he privilege of having the usage of city streets which abuts one's property, is in no respect different from the privilege shared by the general public in the usage of public streets." *Id.* The court also distinguished valid user fees for services such as sewer and water; those fees are "based on [a] user's consumption of the particular commodity." *Id.* at 768. Therefore, the court held that the charge was a tax, not a fee. *Id.* at 768.

15

Most other courts agree. The Washington Supreme Court held that a purported "residential street utility charge," imposed upon all residential dwellings and used to construct and maintain streets, was a tax because the charge was meant "to generate funds for the nonregulatory function of repairing streets" and "the direct relationship between the charges and the benefits received by those who pay them [was] missing." *Covell v. City of Seattle*, 905 P.2d 324, 331 (Wash. 1995). Similarly, the Florida Supreme Court concluded that a charge imposed upon the owners of developed property and used for the "operation, maintenance, and improvement of the local road system" was a tax and not a user fee as its imposition was not "limited" to entities creating the costs to be paid for, and was instead imposed on payers "whose only choice [was] owning developed property within the boundaries of the municipality." *State v. City of Port Orange*, 650 So. 2d 1, 2-4 (Fla. 1994). *Cf. U.S. v. City of Huntington*, 999 F.2d 71, 74 (4th Cir. 1993) (charging an assessment to federal properties based on property square footage which was used to defray general municipal costs for fire and flood protection and street maintenance and improvement was "a thinly disguised tax" rather than a fee).

E.

The City presents several arguments to demonstrate that the ROW assessment is a fee rather than a tax. First, the City argues that the assessment is a valid regulatory fee, because many of the services provided address conditions that, if left unabated, would become nuisances under the broad definition included in the City's legislative code. Because its police powers include the power to abate nuisances in the right-of-way, the

16

City argues, the ROW assessment is a regulatory fee, imposed as a valid exercise of the police power. Specifically, the City points to *American Bank*, in which the court of appeals determined that a special assessment imposed to offset the cost of abating a nuisance was a regulatory fee imposed under the police power. 802 N.W.2d at 787-88.

The City's reliance on a nuisance-abatement rationale to frame the ROW assessment as a regulatory fee is misplaced. *American Bank* presented a starkly different factual scenario than this case. There, the charge was assessed to a single property owner, whose below-grade areaway encroached onto a public street, interfered with the government's ability to maintain that street, and presented a safety hazard during the street's reconstruction. *Id.* at 783-84, 787. The owner was notified of the nuisance and was given the opportunity to remedy it. *Id.* at 784. The owner instead asked the city to do the work and the city assessed the property for the cost of the work. *Id.* In *American Bank*, the need for the work was clearly attributable to an existing hazard, and the expenses the city incurred and the charge it assessed were directly connected to remediation of the hazard.

Here, no argument can be made, and the City makes none, that the services funded by the ROW assessment are needed because the property owners cause the potential nuisances or engage in any regulated activity. In Saint Paul, nearly every property owner pays the annual assessment without regard to whether the owner has violated any ordinance or undertaken any activity requiring regulation. Rather, maintenance funded by the ROW assessment addresses standard wear and tear on the streets, caused largely by Minnesota weather and use by the general public. Services necessitated entirely by natural

17

conditions—such as snow plowing and ice control—do not relate to the *regulation* of any assessed payer's activities. *See Farmers Ins. Grp.,* 278 Minn. at 174, 153 N.W.2d at 240 ("Only those cases where regulation is the primary purpose [of a revenue-raising law] can be specially referred to the police power.") (citation omitted) (internal quotation marks omitted). As in *Crescent Oil Co. of Minnesota v. City of Minneapolis*, in which we determined that an ordinance imposing a charge upon all filling stations in the city was not a valid exercise of the police power, the administrative code provisions for the ROW assessment "contain[] no regulatory provisions, and no regulation is had." 177 Minn. 539, 542, 225 N.W. 904, 906 (1929).

Indeed, the City has specific and separate procedures for abating nuisances caused by code violations, and for charging the costs of abatement against the offending properties. Saint Paul, Minn., Leg. Code § 45.08, .10 (2016). In *Country Joe*, we considered it significant that the city already had a fee in place to cover the "purely regulatory costs" of issuing and enforcing building permits. *See* 560 N.W.2d at 686. Similarly, Saint Paul already has a method to collect a true regulatory fee from those property owners who cause or allow nuisances.

Next, the City points to the fact that, unlike the charge held to be an unlawful tax in *Country Joe*, funds collected through the ROW assessment are kept in segregated accounts used only to pay for right-of-way maintenance services. Though the City is correct that this feature is more suggestive of a fee than a tax, it is not dispositive. Taxes, too, may be held in segregated accounts. *See Empress Casino Joliet Corp. v. Balmoral Racing Club,*

*Inc.*, 651 F.3d 722, 732 (7th Cir. 2011) (describing Social Security taxes and federal gasoline taxes as taxes held in segregated funds). Here, the "segregated fund" takes in more than $20 million each year, pays for a wide array of city services, and is used largely to provide services that fulfill the City's duty to maintain its public streets in a safe and usable condition. *See Donald v. Moses*, 254 Minn. 186, 196, 94 N.W.2d 255, 262 (1959) ("[I]t is clear in this state that the duty to keep sidewalks and streets in a safe condition is a responsibility which the municipality retains at all times as a primary duty."). On such facts, the City's separate accounts do not convert the tax into a fee.

Finally, the City and amicus League of Minnesota Cities contend that the ROW assessment should be considered a police-power fee because several of the maintenance services that the assessment funds are included in a statutory list of "special charges" that cities may assess against properties. *See* Minn. Stat. § 429.101 (2014). That some portions of the ROW assessment could theoretically be chargeable separately under that statute does not change the outcome here, for two reasons. First, some services listed in section 429.101 are also listed in Minn. Stat. § 429.021 (2014), in which they are specifically described as local "improvements," the cost of which may be "defrayed by special assessments."[10] Second, the ROW assessment funds many services not described in section 429.101, but

---

[10]      For instance, Minn. Stat. § 429.101 lists "the trimming and care of trees and the removal of unsound trees from any street," as well as "the operation of a street lighting system" as services for which a city can impose a "special charge." Similarly, Minn. Stat. § 429.021 defines the "trimming, care, and removal" of "trees on streets" and the "install[ation], replace[ment], exten[sion], and maint[enance of] street lights and street lighting systems" as improvements.

19

that are described in section 429.021, such as improving and maintaining city streets, including "maintaining sidewalks, pavement, gutters, curbs, and vehicle parking strips . . . [and] graveling, oiling, or otherwise improving the same, including the beautification thereof." Minn. Stat. § 429.021, subd. 1. Special assessments for improvements under section 429.021 are imposed under the taxing power. *See Buettner*, 277 N.W.2d at 201 ("A special assessment is a tax, intended to offset the cost of local improvements . . . .").

Viewed as a whole, the ROW assessment does not qualify as a "special charge" under section 429.101, but operates as a tax. It funds the bulk of the City's public right-of-way maintenance program. The substantive features of the City's unique program—annually recurring assessments, imposed nearly city wide, benefiting largely the general public traveling the rights-of-way, with diverse services largely provided on an "as needed" basis—demonstrate that this program is a "revenue measure, benefiting the public in general," that draws its authorization from the power to tax. *Country Joe*, 560 N.W.2d at 686. Accordingly, the City's ROW assessment is a tax subject to constitutional restrictions on the taxing power.

## II.

Having concluded that the ROW assessment is imposed as an exercise of the City's taxing power, we must determine the appropriate disposition of the case. To decide whether summary judgment in favor of any party is appropriate, we must review the record to determine whether any issues of material fact exist, whether the district court correctly

20

applied the law, and whether any party is entitled to judgment as a matter of law. *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 61 (Minn. 2014).

In granting summary judgment to the City, the district court erred in concluding that the ROW assessment was not an exercise of the City's taxing power. Because of this error of law, repeated by the court of appeals, neither court applied the correct legal standards— those limiting the taxing power—to the Churches' claims. As a result, neither court considered the question of whether a genuine issue of material fact exists regarding the amount of special benefits, if any, accruing to the Churches' properties from the right-of-way services.

In this case, each of the four remaining claims on appeal turns in part on the amount of special benefits, if any, to the Churches' properties. The four claims are that the assessment (1) violates constitutional principles of uniformity; (2) exceeds any special benefit; (3) is not roughly proportional because it is imposed on the basis of frontage; and (4) is imposed in excess of the actual cost, because the properties were assessed at higher rates than downtown multi-unit residential properties. Claims such as these necessarily require consideration of the amount of special benefit to the Churches' properties. *See Anderson v. City of Bemidji*, 295 N.W.2d 555, 559 (Minn. 1980).[11]

---

[11] Although the Churches frame the fourth claim as being based on the assessment exceeding the actual costs of providing services, whether the assessment exceeds the costs of providing services to the specific rights-of-way abutting the Churches' properties is not relevant to whether the assessment is valid. *See In re Vill. of Burnsville*, 310 Minn. at 41, 245 N.W.2d at 450 (holding that the "proper test of the validity of an assessment is whether or not it exceeds the special benefits conferred," not whether it differentiates between properties that abut the improvement and those that do not). The Churches' argument on

Whether the properties were specially benefited by the government services is a question of fact. *In re Superior St. in Duluth*, 172 Minn. 554, 561, 216 N.W. 318, 321 (1927). In this case, both parties have presented evidence on that question. The City has presented evidence of the specific types of services received by the Churches' properties in 2011, and further has introduced the relevant excerpts of its assessment roll into the record.[12] Because the levying of a special assessment is a legislative act, an assessment is presumed to be legal. *Am. Oil Co. v. City of St. Cloud*, 295 Minn. 428, 435, 206 N.W.2d 31, 36 (1973). Introduction of the assessment roll into evidence constitutes prima facie proof that the assessment is valid and does not exceed the special benefit to the assessed properties. *Buzick v. City of Blaine*, 505 N.W.2d 51, 53-54 (Minn. 1993); *Ewert v. City of Winthrop*, 278 N.W.2d 545, 548 (Minn. 1979). The Churches have countered with evidence in the form of real estate appraisals for each property, conducted by a certified appraiser, concluding that the right-of-way services provided no market value increase.

In the absence of a determination by the trial court that the Churches' proffered appraisals are not competent evidence,[13] a genuine issue of material fact exists regarding

claim four—premised on the different assessment rates applied to residential properties and all other properties—can be characterized as an alternative argument that the assessment is not roughly proportional to the special benefits accruing to the assessed properties.

[12]     The court of appeals' statement that the roll is not in the appellate record is incorrect, as relevant portions of the 2011 ROW assessment roll were attached as exhibits to the City's response to the Churches' motion for summary judgment.

[13]     The City asserts that the district court made a "finding" that the appraisals offered by the Churches are not competent evidence to overcome the assessment's presumption of

the extent of special benefits to the Churches' properties attributable to the right-of-way services, and summary judgment is therefore inappropriate. *See Tri-State Land Co. v. City of Shoreview*, 290 N.W.2d 775, 778 (Minn. 1980). When the presumption of validity afforded the assessment is rebutted, a district court has a duty as fact-finder to independently determine whether the amount of an assessment exceeds the special benefits to the property. *Ewert*, 278 N.W.2d at 548, 552; *In re Vill. of Burnsville*, 310 Minn. at 41, 245 N.W.2d at 451; *Nyquist v. Town of Center, Crow Wing Cty.*, 312 Minn. 266, 270, 251 N.W.2d 695, 697 (1977), *overruled on other grounds by Downtown Dev. Project, Marshall City Council Resolution No. 57 v. City of Marshall*, 281 N.W.2d 161, 163 n.3 (Minn. 1979).

Therefore, we reverse the decision of the court of appeals and remand this case to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

HUDSON, J., took no part in the consideration or decision of this case.

---

validity. However, the district court's order granting summary judgment to the City and denying it to the Churches made no such finding, and such a finding does not appear elsewhere in the record. The record does include an order denying the Churches' motion to establish that their proffered evidence overcame the presumption of validity afforded to an assessment roll, but the district court denied that motion on the ground that the Churches did not comply with notice requirements in bringing the motion.